[Civ. No. 6342.   Third Appellate District.—April 23, 1940.]

MAHLON T. MORSE et al., Appellants, v. PEARL CUSTIS et al., Respondents.

David E. Hinckle for Appellants.

Volney P. Mooney, Jr., and Sylvester Hoffman for Respondents.

TUTTLE, J.—This action was brought to have the court adjudge that respondent Hattie Thompson holds certain real property in trust for appellants, and to require respondent to render an account. The trial court found against the contention of appellants, and judgment was entered accordingly. The appeal is from such judgment, and is based upon the judgment roll alone. The sole question is whether or not the findings support the judgment.

The essential facts and background as disclosed by the findings are as follows: Mary E. Morse executed a grant deed to Hattie Thompson, her daughter. Attached to the deed was an instrument signed by the grantor, and reading as follows:

"West Los Angeles, Calif.,
"December 22, 1932.

"I request Hattie Thompson whenever this property is sold to pay to each of my heirs, share and share alike, the proceeds from the sale of this property described as Lot Twelve, in Block Ten, of San Vicente Park, in the City of Los Angeles, Calif.

" (Signed) MARY E. MORSE."

The deed was delivered to a son of Mary E. Morse, with a request that he deliver it to the grantee upon the death of the grantor. Upon the death of the latter, the deed was duly delivered and recorded. The judgment reads:

"That the legal title to Lot 12 in Block 10 of San Vicente Park, in the City of Los Angeles, County of Los Angeles, State of California, as shown in Map Book 12, at page 62, in the office of the Recorder of said County, is held by defendant, Hattie Thompson in trust for the heirs of her mother, Mary E. Morse, as beneficiaries; that said heirs are Mahlon T. Morse, James M. Morse, Alfred N. Morse, Pearl Custis, Hattie Thompson, Bernice Jacobs and Dorothy Kumpher; that while she so holds said title, she shall have the possession of, and the right to use said property, and to lease it to others, and shall have the rents, issues and profits thereof; that such part of said rents, issues, and profits as may be necessary for the purpose of paying taxes and assessments levied on said property and of preserving the *corpus* of the estate for the beneficiaries in as good condition as it was when conveyed to her in trust, ordinary wear and tear and damage by act of God and from causes beyond her control excepted, she shall use for such purpose; that she shall have as hers absolutely, free and clear of any claim by the other heirs of said Mary E. Morse, any part of said rents, issues and profits remaining after such taxes, assessments and maintenance have been so paid; that she may, at her sole discretion, sell or continue to hold the said real property, during her lifetime, for the uses and purposes hereinabove set forth, and that she shall not be required to account to any of the heirs or parties to this action as to any receipts or disbursements prior to such sale; and that when said property is sold she shall divide the proceeds, as and when they are received by her, among the said heirs of said Mary E. Morse as follows: To Mahlon T. Morse, James M. Morse, Alfred N. Morse, Pearl Custis and Hattie Thompson each one-sixth of said proceeds, and to Bernice Jacobs and Dorothy Kumpher each one-twelfth of said proceeds."

It is the contention of appellants, who are the heirs of Mary E. Morse, that the judgment should have provided:

"That the conditions of the trust upon which said property was conveyed to Hattie Thompson were that she should hold the legal title thereof for the benefit of all the heirs of the trustor; that she should sell said property as soon as she could do so with reasonable diligence; that she should divide the proceeds in equal shares *per stirpes* among the heirs of the trustor; that she should obtain such rentals for the property as she could with reasonable diligence while the title

remained in her name; that out of such rentals she should pay the taxes, upkeep and other maintenance of the property; and that the balance, if any, remaining should be divided at reasonable times in equal shares *per stirpes* among the heirs of the trustor, after deducting the trustee's reasonable fees and expenses.''

It will be observed that the court *did* adjudge that the property was held in trust by respondent, and this portion of appellants' contention was upheld. Appellants insist, however, that the court should have further decreed a sale of the property within a reasonable time, and a division of the proceeds of such sale among the heirs. They argue that when the grantor used the word ''whenever'' in the instrument attached to the deed, she thereby intended that the property *must* be put up for sale by the grantee.

It is an elemental rule that it is the duty of the reviewing court to give the findings a liberal construction in support of the judgment, ''and whenever the facts found are such as might authorize different inferences therefrom, it will be presumed that the inference made by the trial court was one that will uphold rather than defeat the judgment. In such case the appellate court will not draw from those facts any inference of fact contrary to that which might have been drawn by the trial court for the purpose of rendering its judgment''. (2 Cal. Jur., p. 871, sec. 511.)

This case coming to us upon the judgment roll alone, we must assume that there was sufficient evidence to justify the trial court in its construction of the instrument which established the trust. It is obvious that the trial court found that when the grantor used the word ''whenever'', she intended to convey the meaning ''in the event'', or ''if'', and consequently it held and concluded that respondent was not obligated to sell the property, and that she might hold it during her lifetime. It may be that a contrary inference could have been drawn, but even so, under the rule stated, we would be without power to substitute our own construction for that adopted by the trial court. That there is ample authority for the action of the court, appears in the definition of ''whenever'' in 68 C. J., page 250:

''An adverb of time, rather than of place, frequently looking to the future rather than the past. It has been said that in its common acceptation 'whenever' means, or its natural meaning is, as long as; as often as; as soon as; at any

time; at any time when; at whatever time; at whatever time it shall happen; or at what time soever.''

The case relied upon by appellants is *Campbell* v. *Kennedy,* 177 Cal. 430 [170 Pac. 1107]. The plaintiff conveyed certain real property to defendant, and the latter executed a writing whereby he agreed that whenever he sold the property he would, after deducting and retaining the amounts advanced by him, give one-half of the balance of purchase price to plaintiff. The record upon appeal included a transcript of the testimony, and the court found that the defendant had promised plaintiff he would, and could, sell the land within a reasonable time. Consequently, when the court construed the word ''whenever'', it was guided and controlled by the evidence in arriving at the intent of the parties. Here, *we* have nothing but the word itself. The *trial* court, however, had the evidence before it. It is not so much a question of an abstract definition, but rather a matter of how the grantor intended to use the word under the facts and circumstances disclosed by the record.

No valid reason being shown for a reversal of the judgment, it is ordered that it be affirmed.

Pullen, P. J., and Thompson, J., concurred.