[Civ. No. 12182. First Dist., Div. Two. Sept. 11, 1942.]

JEAN LORD, Appellant, v. PHIL C. KATZ, as Administrator, etc., Respondent.

Cleveland R. Wright and Taft & Wright for Appellant.

Henry F. Boyen, Frank J. Fontes and Elkins & Wright for Respondent.

NOURSE, P. J.—Plaintiff has appealed from a judgment in favor of defendant as administrator of the estate of John Ryan, deceased, in an action seeking to quiet title to certain shares of corporate stock. Plaintiff's claim of ownership of the shares is based upon an alleged gift *inter vivos* by the decedent of whose estate respondent is administrator. A second count of the complaint sought to enforce payment of a

creditor's claim against the estate of the decedent but at the commencement of the trial this count was dismissed on the statement of counsel that he relied exclusively on the first cause of action.

The decedent at the time of his death on January 27, 1941, was a bachelor seventy-nine years of age. He had been retired for more than twenty years, living on the income and proceeds of securities he had accumulated. The plaintiff is a widow. Her husband, Frank Lord, died on June 13, 1937. Frank Lord and the decedent had known each other since the former was a boy four or five years of age. The decedent was about eighteen years his senior. In about 1920 the two met again in San Francisco and Frank Lord invited the decedent to his home for dinner. Thereafter the decedent called for dinner about every two weeks. Commencing a few years later the decedent was almost a daily visitor. About eighteen years ago the Lords moved to a home on Funston Avenue. Thereafter Ryan spent almost every day there puttering in the garden and having his noonday meal with Mrs. Lord. On occasions he would remain for dinner and sometimes spend the night. On holidays and other occasions such as birthdays he was always among the guests. During this period he lived at a small hotel but for about five months after Mr. Lord's death he stayed at the Lord home. He had frequently told Mrs. Lord that he had no relatives except that he might have some ''forty-second cousins.'' In January of 1940 while he and Mrs. Lord were having lunch, no one else being present, the decedent handed her a key and stated that it was the key to his safe deposit. She inquired why he was giving it to her and he replied, ''Well, because everything in it is yours.'' He then said there were 570 shares of Transamerica, 50 shares of Bank of America, 11 shares of Bank of Blair (Bankamerica Blair Corporation) and 26 of Equity Corporation. (These were the only securities found in the box after Mr. Ryan's death. All the certificates bore dates prior to January of 1940.) Subsequent to this time the key remained in Mrs. Lord's possession continuously. Mr. Ryan at no time asked that it be returned to him. Mrs. Lord did not tell anyone of the conversation except that her daughter knew she had the key and she told her daughter what Mr. Ryan had stated was in the box. (The daughter did not testify.) Mr. Ryan dropped dead on January 27, 1941, at Mrs. Lord's home, and was buried in the

Lord family plot. The foregoing facts were brought out by the testimony of plaintiff alone except that the intimacy of the acquaintanceship was corroborated by two other witnesses, and the contents of the box after decedent's death was established by the inventory of a representative of the defendant.

After the alleged gift plaintiff did nothing towards reducing the stock certificates to her physical possession, though she had her own safe deposit box in the same bank. During this same period Mr. Ryan visited the box on five different occasions though his purpose in so doing does not appear nor does it appear where or when he obtained the key to gain access. In her briefs appellant apparently concedes that he must have had a second key at all times. Mr. Ryan had been accustomed to receiving his mail at the Lord residence. Subsequent to January, 1940, dividend checks were received by mail which plaintiff gave to Mr. Ryan unopened. She testified that Mr. Ryan would ask her why she had not opened them and when she replied that she would not he would say that it would all be hers anyway. She testified on one occasion that she had told him, ''Well, we will wait until it is''; and on another that she told him he would enjoy it. Plaintiff did state that Mr. Ryan owned the stock ''all the time'' but immediately thereafter she modified this by stating that she meant all the time prior to his giving her the key. She also testified that she felt the stock would be hers after Mr. Ryan's death but this answer she explained by stating that she felt the stock was hers when Mr. Ryan gave her the key but that she would not take anything while he was alive. Though she further testified that even after Mr. Ryan gave her the key he could have given the stock to someone else she also explained this testimony by stating that if he had wanted to do so she would have given the stock back.

After Mr. Ryan's death a representative of the defendant telephoned to plaintiff and at his request she delivered to him the key to the box but the court found that ''plaintiff, at the time of said delivery, claimed to be entitled to the contents of said safe deposit box''; and ''plaintiff delivered said key to said safe deposit box under protest.'' This finding is supported by the evidence.

After defendant's appointment as administrator plaintiff through an attorney filed a creditor's claim against the de-

cedent's estate in the sum of $4,620 for services rendered. (The appraised value of the entire estate was $4,603.79) Plaintiff testified that she had gone to the attorney and stated all of the facts to him and that the idea of filing a claim was that of this attorney and was stated by him to be the proper procedure. This claim was rejected. Plaintiff then abandoned the claim and dismissed her attorney. Some time later she met a friend who told her that if decedent had given her the stock and told her the stock was hers she was entitled to it. She then consulted her present attorney and this action was begun.

We have related the evidence in perhaps greater than usual detail because the first and determinative question presented is whether under this evidence the lower court was justified in finding "that it is not true that said John Ryan gave or delivered said certificates of stock, or any of them, evidencing the right to said stock, or any of said shares of stock, or that said John Ryan intended to make a gift of said stock . . . to plaintiff . . ." More properly stated the question is whether as a matter of law the evidence required a contrary finding. The solution of this question must be found in a determination whether the facts presented bring this case within the well settled rule that the court may not arbitrarily reject the uncontradicted testimony of a witness or the equally well settled exceptions to said rule that such testimony may be disregarded when it is inconsistent with surrounding circumstances or where inconsistencies in the witness's testimony or his manner of testifying or the inherent improbabilities of the testimony justify such action. *Davis* v. *Judson,* 159 Cal. 121, 128 [113 Pac. 147]. In truth this is not an exception to the rule for if there are such inconsistencies or inherent improbabilities the rejection of the testimony is not "arbitrary." This determination must be made in the light of the rule that "every element necessary to constitute a gift must be sustained by explicit and convincing evidence." *Sullivan* v. *Shea,* 32 Cal. App. 369, 371 [162 Pac. 925].

Appellant stresses the fact that at the conclusion of the testimony and before the argument the trial judge stated the facts were proved without dispute and stated among other things that it was uncontradicted that the decedent "handed the key to his safe deposit box to Mrs. Lord and told her that the contents of the safe deposit box belonged to her."

Appellant further argues that the judge's express statement and his written opinion (the opinion is not before us) clearly show that the case was decided by him solely on the question of law as to the sufficiency of the delivery. It is true that the statement of the judge is contrary to the finding of fact hereinbefore quoted and it may be that the statement represents his true determination of the facts, but it is settled that inconsistencies between the written opinion of a trial judge or his antecedent expressions and the findings of fact cannot be considered by an appellate court. In *Magarian* v. *Moser*, 5 Cal. App. (2d) 208 [42 P. (2d) 385], the court at page 210 said: "We have been shown no authority to support appellant's argument that the written opinion of the trial judge constituted a part of the court's decision and that its inconsistency with the findings and conclusions filed deprives the judgment of the support and conformity required by law. It is obvious that the judgment as entered must be supported by and conform to the findings (*Nestor* v. *Burr*, 124 Cal. App. 369 [12 P. (2d) 479]), but it seems equally clear that a written opinion of the trial court is no more a part of the decision rendered than an oral pronouncement can be and that such opinion, even if inconsistent with the formal conclusions reached by the court, cannot be made the basis for a reversal when the findings, conclusions and judgment are consistent." In *Phillips* v. *Hooper*, 43 Cal. App. (2d) 467, 470 [111 P. (2d) 22], the court said: "And no antecedent expressions of the judge can in anyway restrict his absolute power to declare his final conclusion, in the only manner authorized by law, to wit, by filing his 'decision' (findings of fact and conclusions of law), provided in sections 632 and 633 of the Code of Civil Procedure. (*Scholle* v. *Finnell*, 173 Cal. 372 [159 Pac. 1179]; *Fisk* v. *Casey*, 119 Cal. 643 [51 Pac. 1077]; *Montecito Valley W. Co.* v. *Santa Barbara*, 144 Cal. 578 [77 Pac. 1113]; *Risinger* v. *Anderson*, 10 Cal. App. (2d) 455 [51 P. (2d) 1119].)" This rule has again been followed and reaffirmed in the recent case of *Lawrence* v. *City of Los Angeles*, 53 Cal. App. (2d) 6, 9 [127 P. (2d) 931].

It is respondent's contention that appellant's testimony was full of inconsistencies of which the trial court was the exclusive judge in reaching its determination whether a gift was intended. Respondent adds that the fact that the gift would have divested the decedent of his only means of support except for a bank account of about $1,100 makes it improbable

that such a gift was made. Appellant endeavors to explain each of those inconsistencies and presents a case which would have fully supported a judgment in her favor. But, as there is some evidentiary support for the findings this court is bound by those findings. Appellant cites *Gordon* v. *Barr,* 13 Cal. (2d) 596 [91 P. (2d) 101] ; *Braun* v. *Brown,* 14 Cal. (2d) 346 [94 P. (2d) 348, 127 A. L. R. 773], and similar cases where findings contrary to those made here were approved or where the decision rested solely on a question of law. In those cases the court was concerned with the question of the sufficiency of the delivery as a matter of law; in none is it held that all the circumstances may not be considered in determining whether the testimony tending to prove delivery and intent may be rejected.

In a case of this kind we cannot say that the conclusion of the trial court was entirely arbitrary, and we cannot say that the court was bound as a matter of law to accept all the testimony of appellant as true. Since the judgment must be affirmed on this ground it is unnecessary to consider any of the other grounds urged by respondent.

The judgment is affirmed.

Sturtevant, J., and Spence J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 9, 1942.