[Civ. No. 14946.   Second Dist., Div. Two.   Dec. 7, 1945.]

LOIS E. WUEST, Plaintiff and Appellant, v. WILLIAM O. WUEST, Defendant and Appellant.

Newby, Holder & Newby for Plaintiff and Appellant.

F. Murray Keslar for Defendant and Appellant.

MOORE, P. J.—Defendant appeals from a judgment of department 33 of the Superior Court of Los Angeles County which modifies the interlocutory decree of divorce rendered in department 21 of the same court by Judge Bullock. He grounds his appeal on the insufficiency of the findings to support the judgment and the insufficiency of the evidence to support the findings. While we cannot enthusiastically agree that the evidence in the record preponderates in favor of plaintiff on the issue of fraud in connection with the divorce judgment, yet our doubts as to the wisdom of the findings are without potency under the guidance of the familiar rule that the power of the reviewing court begins and ends with its determination that there is substantial evidence which will support the findings and judgment. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Fischer* v. *Keen*, 43 Cal.App.2d 244, 248 [110 P.2d 693].)

Plaintiff is also dissatisfied with certain provisions of the current judgment and likewise appeals. A clear understanding of the issues necessitates a full narrative of the two trials and the causes of the controversies.

### RÉSUMÉ OF PAST EVENTS AND DECISIONS

Acting through counsel other than those currently appearing, plaintiff filed her action for separate maintenance on August 18, 1939. At that time she was under observation in a psychopathic ward on the complaint of defendant. She was discharged in the following October and the insanity accusation dismissed. Upon a hearing of the order to show cause the court awarded plaintiff alimony but awarded custody of the two children to defendant. The case came on for trial in February, 1940, when evidence was taken, and again on April 24 when two physicians filed their reports declaring plaintiff to be sane but extremely nervous. Two days later plaintiff by leave filed her amended complaint alleging extreme cruelty, praying for custody of the children and a "reasonable division of the itemized community property," support and maintenance and attorney's fees. Defendant thereupon filed his answer and cross-complaint for divorce. Other sessions were held. On May 22 a stipulation signed by the parties and their counsel

was approved by the court and on May 31, 1940, the interlocutory decree was entered whereby plaintiff was awarded the right to a divorce, her share of the community property "in accordance with the aforementioned stipulation," and the children were committed to the care of defendant.

### The Stipulation

Since the stipulation is the storm center of this controversy an outline of its terms will serve to illuminate our discussion. It was executed during the progress of the divorce trial on May 22, 1940. It established (1) the present net value of the community property to be $34,165.25; (2) one half thereof is to be paid Lois in full settlement of her community property rights, at the rate of $50 monthly in two equal installments over a period not to exceed 23.73 years; (3) after her share shall have been wholly paid all her rights shall then be satisfied and William shall own as his separate estate all the property free and clear of any claims of Lois; (4) all of such monthly payments shall be in addition to alimony to be payable to Lois; (5) the $17,082.62 shall be a lien on the three parcels of realty described; (6) the parties will execute all documents necessary to effectuate the stipulation; (7) William will pay all indebtedness against the properties; (8) the parties shall divide the home furnishings as previously agreed; (9) the balance of $550 attorney's fees shall be paid directly to plaintiff's counsel in monthly installments; and (10) William shall furnish Lois annually a certified copy of his income tax return made to the federal government.

### The Interlocutory Decree

In addition to the divorce and award of the $17,082.62 plaintiff was granted an allowance of $75 monthly to be paid in two equal installments and defendant was enjoined from encumbering or disposing of the real property prior to a full compliance with the stipulation.

Having unsuccessfully attempted in April, 1941, to cause the divorce decree to be modified with respect to its disposition of the community property, on May 27, 1941, plaintiff through her counsel herein appearing filed the instant action demanding that the divorce decree be set aside insofar as it affects the property rights of the parties; that plaintiff's share of $17,082.62 less the amounts already applied thereon be paid forthwith to plaintiff and that in the event of default of such

payment the property described in the divorce decree be sold for the purpose of enforcing the lien thereof.

## The Attack on the Divorce Decree

The alleged bases of plaintiff's attack upon the divorce decree are as follows: (1) Plaintiff had suffered from numerous physical assaults upon her by defendant for several years preceding the commencement of the divorce action; (2) such assaults, coupled with the fact of plaintiff's passing through a change of life, caused her to be in a highly nervous condition at all times during the pendency of the divorce litigation; (3) her health was in such a precarious condition that she was subjected, during the trial, to investigation by court assistants and psychiatrists; (4) plaintiff was informed by her own attorney that the judge of department 21 had stated that plaintiff might not be awarded a decree of divorce if she should refuse to sign the stipulation so that neither party could appeal; (5) the judge stated in open court before the stipulation was signed that she did not think the evidence sufficient to sustain a cause of action for separate maintenance or divorce and demanded that the agreement of the parties be put in writing because they might change their minds; (7) plaintiff signed the stipulation because of such representations, her weakened mind, her menopause, and the assaults upon her by defendant.

The complaint also alleged that plaintiff had not been informed before she signed the stipulation that she would thereby be deprived of applying for a modification of the judgment with reference to her property rights; that she was never informed within six months after the divorce decree that she might apply to the court for relief under section 473, Code of Civil Procedure; that during the trial of the divorce action the judge in chambers informed the attorneys that the court would not divide the property in kind for fear that plaintiff because of her unstable condition might not be able to hold her property or the proceeds of a sale thereof, and that plaintiff's share "should be based upon her life expectancy" and paid to her in monthly installments; that plaintiff had no knowledge of those conferences until about May 27, 1941; that she never authorized her attorney to waive written findings.

A general demurrer to the complaint herein was sustained without leave to amend. From a judgment of dismissal plaintiff appealed, resulting in a reversal with a declaration that if a trial judge is convinced by the evidence that a plaintiff is

entitled to recover, judgment should accordingly be entered, leaving plaintiff free to appeal from such portion thereof as may be deemed unjust. (*Wuest* v. *Wuest*, 53 Cal.App.2d 339, 345 [127 P.2d 934].)

The cause was tried in October, 1944, after which the court made findings that all of the substantial allegations of the complaint are true. The court concluded and adjudged that the divorce decree be revised only in the following particulars: (1) It is void as to the division of the community property; (2) in lieu of such division plaintiff shall recover $17,082.62, the value of her share as of May 31, 1940, less the sum of $3,150 which had been paid since the latter date; (3) provided that prior to the expiration of 30 days after entry of judgment defendant may execute his promissory note for the sum awarded in favor of plaintiff, maturing in ten years, bearing interest at six per cent per annum from its date, and other customary stipulations of such documents, such note to be secured by a first mortgage upon the three parcels of real property constituting substantially the corpus of the community estate; (4) upon his payment in full of the amount due under the judgment then the title to the three parcels shall vest in defendant as his own separate estate; (5) this judgment is not intended to affect the provisions of the interlocutory decree of divorce or its order for alimony.

In his effort to demonstrate his theses defendant invokes the statements of the trial judge made in the course of his colloquies with counsel. In this he must fail. Remarks of the trial judge made in the course of trial or in a final opinion of the court are ineffective to override the decision embraced in the findings and conclusions. (*DeCou* v. *Howell*, 190 Cal. 741, 751 [214 P. 444]; *Lord* v. *Katz*, 54 Cal.App.2d 363 [128 P.2d 907]; *In re Lasker*, 51 Cal.App.2d 120, 124 [124 P.2d 72].)

### The Evidence Supports the Findings

Plaintiff's right of recovery arises out of a combination of facts. The first is that she had suffered extreme cruelties at the hands of defendant. The judgment roll in the divorce action was received in evidence. It established detailed allegations of extreme cruelty. Judgment for plaintiff awarding divorce for cruelty having followed a waiver of findings it is presumed that sufficient evidence was received in support of such findings. (*Geneusz* v. *Harrington*, 218 Cal. 760, 762 [25

P.2d 4] ; *Gin S. Chow* v. *City of Santa Barbara,* 217 Cal. 673 680 [22 P.2d 5].) Also the charge of defendant's extreme cruelty was adjudicated in the divorce action and no appeal was taken therefrom. Moreover, at the trial of this action plaintiff testified that he was so abusive she could not go back to him.

That plaintiff was suffering a high degree of nervousness was established by the facts that defendant had in a legal proceeding accused her of insanity and that she was undergoing examinations by specialists appointed by the court and found to be highly nervous at the divorce trial.

■ While plaintiff's testimony that her own attorney told her that the judge told him that a divorce might not be granted unless she signed the stipulation was hearsay and should have been rejected, yet her testimony that the judge stated in her presence that the court wanted her to sign the document so that there would be no appeal was competent evidence. Since it was believed by the court and all contradictory evidence was rejected, we have the fact established that the sick woman, fearing that she would be required to go back to a husband who had mistreated her, was required to sign an agreement the full import of which she did not comprehend and which operated to her disadvantage.

■ The findings are sustained not only by the testimony of Mrs. Wuest but also by all inferences which might reasonably have been drawn by the trial court. (*Patten & Davies Lumber Co.* v. *McConville,* 219 Cal. 161, 164 [25 P.2d 429] ; *Hotaling* v. *Hotaling,* 193 Cal. 368, 379 [224 P. 455, 56 A.L.R. 734] ; *Morse* v. *Custis,* 38 Cal.App.2d 573, 576 [101 P.2d 702].) These cases hold that every substantial conflict in the evidence must be resolved in favor of the finding; that of two conflicting inferences fairly deducible from the evidence on appeal that must be accepted which supports the judgment; that in a case where different inferences may be drawn the reviewing court will not draw from the facts any inferences contrary to such as might have been drawn by the trial court. In view of the eagerness of Judge Bullock to protect plaintiff against herself it was not an unreasonable inference that in her zeal to confer a benefit upon the unfortunate woman the judge approved of a division of the community property which was violative of plaintiff's legal rights.

### THE FINDINGS SUPPORT THE JUDGMENT

■ To defendant's contention that the findings do not support the judgment it will be noted that in addition to

the finding of the execution of the stipulation by the parties and their counsel and the entry of the judgment in pursuance thereof the court found true all of the substantial allegations of the complaint. The finding that the judge's remark in open court caused plaintiff honestly to believe that a divorce would be denied her unless she joined in the stipulation is tantamount to the finding of a fraud. Plaintiff was at the time under surveillance and her memory of the psychopathic ward was not mollified by either her existing nervous condition or her simultaneous examinations by the psychiatrists. From these findings the conclusions and judgment logically follow, since upon obtaining a divorce on the ground of extreme cruelty she was entitled to more than the share awarded to defendant who was at fault. (Civ. Code, § 146; *Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65].)

### PLAINTIFF NOT ENTITLED TO A DIVISION IN KIND

But plaintiff presents her grievances against the decision to which we now advert. Her first attack is upon the failure to make a division in kind. ■ The provision that the appellate court is authorized to revise the trial court's disposition of community property (Civ. Code, § 148) is not to be construed as an authorization that we must necessarily interfere with a decision upon an issue which is committed to the sound discretion of the trial judge. Whether valuable properties should be transferred to a woman who demonstrates no special genius for management of business affairs, who is ill and so extremely nervous as to require a denial to her of custody of her children necessitates a most careful scrutiny by the court before whom she presents her cause. ■ It is presumed that before making a division of community properties upon a dissolution of the marriage the trial court considered the health of both parties, their capabilities and all other factors that weigh in a determination of whether it is necessary to make a partition in kind or by sale. (Civ. Code, § 147.) While we have reviewed the evidence we find no good reason for altering the judgment upon that score. Both judges before whom plaintiff appeared concluded that her interest in the properties would be best conserved by having them operated by the defendant. The "particular circumstances" which plaintiff asserts must exist in order to justify a cash payment instead of a division in kind did appear in bold outline at both trials.

█ Two of the parcels are revenue-producing properties. No overpowering reason is suggested why their operation should not be committed to defendant. His business experience as well as plaintiff's lack of it and her precarious health argue sternly for defendant's retention of control of those properties. While it is true that a wife and mother should as a general rule retain possession of the home, yet where the husband has the care of the children with the aid of an employed housekeeper and is required to pay the wife moneys with which to hire a home, it cannot be said that the court below did not exercise a sound discretion in awarding money to plaintiff for her interest in that property. Where one spouse at the time of divorce is ill and the other is capable of caring for the minor children and of operating the community property, it is a wise policy to award the unfortunate partner in the community his share in money in lieu of a specific interest and award title and possession of the properties to that one who is able therewith to maintain a home and provide for the progeny. (*Bailey* v. *Bailey*, 142 Wash. 359 [253 P. 121].) █ It is the settled practice for the courts to divide the community estate between the spouses and to award the nonoffending party support money in lieu of a share of the property or in addition thereto. (*Webster* v. *Webster*, 216 Cal. 485 [14 P.2d 522]; 3 Cal.Jur. 10-Yr.Supp. 669.)

### PARCEL 1 WAS COMMUNITY PROPERTY

█ The finding that parcel 1 was community property is amply supported. The lot was purchased on contract after marriage with the earnings of the parties. About a year prior to the maturity of the contract defendant assigned it to plaintiff who on September 15, 1919, took title in her name and at defendant's suggestion declared a homestead thereon. Three years later the homestead was abandoned and subsequently they joined in executing a mortgage upon the lot which was discharged with their joint earnings. Another loan was secured by a trust deed which was likewise paid with community earnings and a reconveyance was made in the usual form. Nine years thereafter defendant obtained a loan of $5,000 on the business lot (parcel 2) which fund he expended in improving the home. That loan having become defendant's obligation by virtue of the divorce decree was thereafter repaid by him. Finally, when plaintiff filed her first complaint

for separate maintenance in her amended complaint she alleged that parcel 1 was community property.

All lands or personalty acquired after marriage by either husband or wife with earnings of either is community in character. (Civ. Code, § 164.) While the fact that title to property standing in the name of the wife is presumed to be her separate property, that is a rebuttable presumption. Whatever may have occasioned the placing of the title in her name, the other facts above mentioned and reasonable inferences fairly deducible therefrom warrant the finding that parcel 1 was community property. Plaintiff cites many authorities holding that the husband may make gifts of community property to his wife (*Title Insurance & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 P. 360]; *Yoakam* v. *Kingery,* 126 Cal. 30 [58 P. 324]; *Miller* v. *Brode,* 186 Cal. 409 [199 P. 531].) But none of these or any other decision prevents the trial court from deciding upon substantial evidence that the conveyance of a community asset to the wife was not intended as a gift thereof to be her separate estate.

### The Evidence Supports the Finding of Value

Plaintiff contends that the court adopted the values established in the divorce action and that it exercised no independent judgment to derive a determination of that issue. She argues that because her expert witness Rees called in the latter stages of the trial testified the value of parcel 2 to be $22,800, the court had no alternative but to adopt that appraisal rather than $15,000. Plaintiff overlooks the fact that the court received in evidence the files in the divorce action which show an appraiser of the Department of Water and Power of the City of Los Angeles, to be $15,000 on parcel 2. No good reason appears why the court should have adopted the valuation fixed by Mr. Rees rather than that by Mr. Elkins. Moreover, by stipulation of the parties the court appointed an appraiser for his own "guidance." At any rate, a determination of a fact upon conflicting evidence is the peculiar function of the trier of facts. (*Patten & Davies Lumber Co.* v. *McConville, supra.*)

### Plaintiff Entitled to Interest

Finally, plaintiff assigns as error the court's refusal to allow her interest on the value of her share from May 31, 1940. On this issue she must prevail. When plaintiff's share

of the community estate was transferred to defendant for a specified sum on May 31, 1940, she was entitled to the $17,082.62 at that time. That defendant was granted the privilege of discharging his debt by meager installments should not be interpreted to mean that he was to be relieved of the obligation to pay interest. By such a construction plaintiff received much less than one-half of the value of the properties, contrary to law and to the intention of the judge who signed the divorce decree. A judgment bears interest from its date unless the contrary appears. (Code Civ. Proc., § 1033; *McNabb* v. *McNabb,* 47 Cal.App.2d 623, 627 [118 P.2d 869].) It follows that the original judgment for $17,082.62 bore interest from May 31, 1940, to October 26, 1944, in the sum of $5,260.32, making the amount thereof $22,342.94. Deducting therefrom the total payments theretofore made, to wit, $3,150 and interest on the installments after payment in the sum of $357, leaves $18,835.94 as the amount for which the revised judgment should have been entered.

It is therefore ordered that the judgment herein be modified by substituting $18,835.94 in place and in stead of $13,932.62 and as thus modified it is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied January 2, 1946, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied February 4, 1946. Shenk, J., voted for a hearing.