[Civ. No. 15114. First Dist., Div. Two. Oct. 2, 1952.]

PHIL C. KATZ, as Public Administrator, etc., Respondent,
v. MATT WAHRHAFTIG et al., Appellants.

Matt Wahrhaftig in pro. per. and J. D. Cooper for Appellants.

Henry F. Boyen and Fitzgerald, Abbott & Beardsley for Respondent.

JONES, J. pro tem.—This appeal is taken from a particular part of a judgment determining adverse claims to the Guadalupe Mine and Ranch in Santa Clara County. The property is comprised of a quicksilver mine and several hundred acres of land, and was owned by Mrs. Jessie S. Gregory who is now

deceased. During her lifetime Mrs. Gregory gave deeds to an undivided one-half of the property to her attorneys as their fees for representing her in litigation involving the property. She gave another deed to appellants on February 23, 1937, of the other undivided one-half, and it is from the part of the judgment decreeing that this deed was given upon the trusts found by the court that the appeal is taken.

The court found that by virtue of the execution of the deed appellants acquired no beneficial interest or ownership in the property, but that the title to the undivided half thereof was transferred in trust to be held by them during the lifetime of Mrs. Gregory, subject to her order, and with the trust revocable at her pleasure.

Mrs. Gregory died on December 27, 1939, and it was some four years later, November 10, 1943, that the deed dated February 23, 1937, was recorded by appellant, Wahrhaftig.

Appellants contend that the property was deeded upon a trust different from that found by the court. No mention of a trust is made in the deed. In form it is a straight grant, bargain and sale deed of an undivided one-half interest in the property from Mrs. Gregory to appellants. Their claim of a trust is based on an alleged oral and secret agreement made with Mrs. Gregory by which they contend they became empowered ''to hold, manage, control, sell, invest and reinvest said property and make leases and exchanges therefor and were to hold the net income of the trust property for the use and benefit of said trustor during her lifetime and upon her death were to pay the net income thereof to Winifred Stover Donnan, niece of said decedent, until her death, and thereafter were to pay the net income or so much of the principal of said trust property as they in their judgment might decide to be necessary for his maintenance and support, to one Dr. Stover, father of Winifred Stover Donnan, until his death, the net income and principal to be payable directly to the beneficiaries and to be free from all claims of creditors to the fullest extent permitted by law and upon the death of the survivor of said Winifred Stover Donnan and Dr. Stover to hold all said property and the proceeds and avails thereof in trust for and to devote the income thereof and so much of the corpus thereof as they in their judgment might elect for the use of Jewish refugees from persecution and to apply the income and so much of the principal as they might desire even to the full amount thereof, for the relief of such Jewish refugees.''

The appeal presents the clear-cut issue as to which trust was established by the evidence. We are of the opinion that the

finding of the trial court in this respect has abundant and substantial evidentiary support and must be sustained.

It is argued by the appellants that the evidence in support of the revocable trust is so lacking in substance as to offer no support for the finding of the trial court as to its existence, but, on the other hand, conclusively establishes a trust upon the terms contended for by them.

The record discloses that on February 24, 1937, the day after the deed was executed Wahrhaftig wrote to Mrs. Gregory stating: "I hereby acknowledge and declare that whatever interest I have acquired under the deed dated February 23, 1937, whereby you conveyed an undivided one-half interest in the Guadalupe property to me and Margaret Hodgen, is being held by me subject to your order; that I claim no interest in said one-half interest; that I am merely holding it as a matter of convenience for you and in trust for you." On the same subject he stated in a letter to Margaret Hodgen written on March 1, 1937, that: "I wish to acknowledge receipt of your letter of February 26, 1937, in which you seem to express some doubt as to the wisdom of taking a conveyance to you and to me as trustees for Mrs. Gregory. She has already executed this conveyance but I am not going to record it for a while at least. I have written her a letter stating that whatever interest I have received is held as trustee for her and subject to her order and that whatever you have received is also subject to her order. I doubt very much whether we will ever have to record the deed."

Upon the trial of the case he testified: "Q. Did she say that the changes in that alleged inter vivos trust might be affected by any subsequent will she might make, any will she might make after that date? A. I do not think she used the word 'will.' I think what she said was she had the right to change it right up to the time of her death."

Miss Hodgen testified: "Q. Did she say anything about any reservation of the right to change the purposes for which you and Mr. Wahrhaftig were to hold the property? A. She did reserve that right, yes. Q. Expressly? A. Yes, she did. Q. And did you and Mr. Wahrhaftig at that time make any statement to Mrs. Gregory that you would observe her wishes? A. We did."

On December 20, 1939, Mrs. Gregory executed a will wherein she named Miss Marjorie Atsatt with Miss Hodgen as executrices and Mr. Wahrhaftig as executor and devised all of

her property to them upon almost the identical trusts claimed by appellants to have been created by the oral agreement. After Mrs. Gregory's death on December 27, 1939, this will was duly admitted to probate. The persons named were appointed as the executor and executrices respectively of the will, and continued to act as such until their resignation on November 8, 1946. At no time during the probate proceedings did the appellants announce to the court the trust which they now claim was created on February 23, 1937. To the contrary they at all times represented that the property belonged to Mrs. Gregory and was subject to her testamentary disposition. The fact that Mrs. Gregory made a will in which she specifically created a trust which by operation of law would become effective upon her death creates a strong presumption that she did not intend the arrangement made on February 23, 1937, to continue beyond her lifetime. The conduct of appellants with respect to the probate of the will and its testamentary effect lends strong support to this presumption.

As is said in *Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550], where the defendants urged as grounds for the reversal of the judgment the insufficiency of the evidence to sustain the findings: "Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings. As was stated in the oft-cited case of *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, at page 429 [45 P.2d 183]: '. . . the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted', which will support the findings, and when 'two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court'. (See, also *Raggio* v. *Mallory*, 10 Cal.2d 723, 725 [76 P.2d 660]; *Fischer* v. *Keen*, 43 Cal.App.2d 244, 248 [110 P.2d 693]; *Laherty* v. *Connell*, 64 Cal.App.2d 355, 357 [148 P.2d 895]; *Wuest* v. *Wuest*, 72 Cal.App.2d 101, 104 [164 P.2d 32].) Careful review of the record here, in the light of these fundamental principles of law, does not sustain defendants' attack upon the propriety of the trial court's determination, and the judgment must be affirmed."

The same may be said of the record in this case.

The portion of the judgment appealed from is affirmed.

Nourse, P. J., and Dooling, J., concurred.