[No. D007350. Fourth Dist., Div. One. Oct. 5, 1988.]

In re the Marriage of BILLIE J. and JAMES T. POLLARD.
BILLIE J. POLLARD, Respondent, v.
JAMES T. POLLARD, Appellant.

**COUNSEL**

Bruce W. Cozart for Appellant.

Melvin D. Rich and Alan B. Clements for Respondent.

OPINION

**WORK, J.—** ▮ In this hopefully unique case, we conclude that part of a judgment of dissolution which awards money in lieu of an in-kind division of nonmonetary community property is a money judgment on which interest accrues from the date of its entry, in the absence of an express or implied agreement by the parties to the contrary. Here, a remarried ex-wife has continued to reside in the marital residence and has received the entire benefit of seven-years' appreciation in value of the marital residence. We conclude the ex-spouse is entitled to the lesser of either postjudgment interest from the filing of an interlocutory judgment awarding him his community equity valued as of that date or the appreciated value of his community share as of the date his ex-wife elects to fulfill her obligation to satisfy his award. Accordingly, we reverse that portion of the challenged order denying postjudgment interest from the entry of the interlocutory judgment of dissolution and remand the case with directions. In all other respects, the order is affirmed.

I

When Billie and James Pollard dissolved their marriage, they agreed Billie would have exclusive possession of the marital residence and that James would receive $33,429.50 as his equity share based on its current January 1981 market value. Because Billie had no present ability to compensate James other than by selling the home and the parties did not want to dislodge their minor children who were to continue living with Billie, they agreed James would be paid when Billie sold the house. However, their agreement did not require Billie to ever sell the house; there was no date stated on which payment was due, nor did the agreement identify any event, the occurrence of which would compel a sale.[1] The agreement expressly gave Billie "sole discretion" of when, if ever, the home would be sold, and thus, at least facially, when, if ever, James would receive his community share. Although the agreement was executed by James without counsel and contained obvious deficiencies regarding his ability to insure receipt of his community share, it was incorporated into the judgment of dissolution and the court retained general jurisdiction to enforce its terms.

Although the last remaining minor child began living with James in 1985 and Billie and her new husband resided in the house after their marriage in

---

[1] Thus, this agreement was not structured in terms contemplated by *In re Marriage of Duke* (1980) 101 Cal.App.3d 152 [161 Cal.Rptr. 444], which would permit deferral of the sale of residences in possession of spouses having custody of minor children where the value of the respective community equities would be determined as of the date of sale or refinance. (See also *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372, 376-378 [107 Cal.Rptr. 232].)

1986, James's award remained uncompensated. When, in June 1987, James petitioned the court to compel Billie to sell the residence, she chose to keep the house and agreed to pay his award by May 1, 1988, from proceeds anticipated from her present husband's marital settlement. The court deferred payment of the award until that date, but refused James's request for interest from the date of the interlocutory judgment.[2] The court's order stated James could bring a new motion to compel sale if Billie defaulted.

## II

■ James's award is a money judgment which bears interest at the legal rate from March 9, 1981, when the judgment was entered. A money judgment is defined as that part of a judgment requiring the payment of money. (Code Civ. Proc.,[3] § 680.270.) Interest commences to accrue on a money judgment on the date it is entered. (§ 685.020.)

In arguing there was no money judgment, Billie relies on language in *In re Marriage of Teichmann* (1984) 157 Cal.App.3d 302 [203 Cal.Rptr. 619]. There, the ex-wife sought interest on a delayed community property award payment on two alternative theories: that the interlocutory award constituted a money judgment or that interest should be paid to insure an equal division of community property as required by Civil Code section 4800, subdivision (a). The court recited its operative facts as follows: "Following a lengthy marriage the parties obtained an interlocutory judgment of dissolution under which terms husband was awarded a business partnership interest and profit sharing plan, and the family residence ordered sold with wife to first receive payment of $89,000 from the net sales proceeds 'to balance the division of the community assets' and, after reimbursement to husband of $3,100 for payment of community obligations, the remaining net balance to be 'divided equally between the parties, thereby effectuating an exactly equal division of the community property.'

"Thereafter, the residence was promptly listed for sale. Due to unfavorable market conditions, the property was not sold until January 16, 1982, over 19 months from the date of the order of distribution. In the interim, wife continued to live in the residence and to maintain its upkeep and the monthly mortgage payments.

"After the sale, wife filed a cost bill requesting accrued interest in the sum of $10,282.98 computed at the rate of 7 percent on the $89,000 award from the date of the entry of the interlocutory judgment. Following a contested

---

[2] The court specifically found the agreement as to the residence was not tied to any waiver of spousal support.

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

hearing, the trial court ordered the cost bill stricken." (*In re Marriage of Teichmann, supra,* 157 Cal.App.3d at pp. 304-305.) The reviewing court found no money judgment and concluded the wife was not entitled to interest.

In denying interest, *Teichmann* distinguished *McNabb* v. *McNabb* (1941) 47 Cal.App.2d 623, 627 [118 P.2d 869] [unpaid child support], *Wuest* v. *Wuest* (1945) 72 Cal.App.2d 101, 111-112 [164 P.2d 32] [money in lieu of community property], and *In re Marriage of Hoffee* (1976) 60 Cal.App.3d 337 [131 Cal.Rptr. 637] [unpaid spousal and child support]. In doing so, the court said, the "[w]ife's award of $89,000 . . . was neither due nor payable by husband but was to be distributed to her from the net proceeds of the eventual sale." (*In re Marriage of Teichmann, supra,* 157 Cal.App.3d at p. 307.) *Teichmann's* result is based on facts different from those with which we are presented. There the court found no money judgment because the trial court ordered the property sold at the time of the interlocutory judgment and the wife to receive $89,000 from the receipts of the sale. The husband did not have the beneficial use of the wife's share during the 19-month interval. Further, at the time of sale the wife shared equally the benefit of the increasing value of the home due to the 19 months' appreciation after the court order and before sale and in the interim had full use and enjoyment of the property. Here, James received no similar benefit while Billie has. Further, Billie has had the beneficial use of James's interest for seven years while he has been deprived of the use of his money award. In equitable terms, we are addressing *Teichmann's* factual flip side.

Here, as in *Wuest,* a sum was ordered payable from one spouse to the other to equalize division of community property. While exactly when Billie chose to sell the community property or otherwise satisfy the debt was left to her discretion, part of the interlocutory judgment required "the payment of money." It is only the date by which the judgment must be satisfied that differentiates it from any other money judgment which conclusively establishes a judgment debtor/creditor relationship.

In *Wuest,* the parties stipulated that wife would receive her community property share currently valued at some $17,000 in monthly installments of $50 over a period not greater than 23.73 years. The stipulation neither called for nor waived interest and the interlocutory judgment was silent on this score, but secured payment by liens on parcels of real property conveyed to husband. More than four years later, the judgment was set aside because of the wife's incompetency to stipulate concerning the property division. The court then entered a new judgment awarding a lump sum in the identical amount of the original award less amounts already paid. However, the new judgment required husband to execute a promissory note

"maturing" in 10 years bearing 6 percent accrued interest. The trial court did not award interest on her share from the date at which her value was appraised four and one-half years earlier. In modifying to award interest, the Court of Appeal noted judgments bear interest from their date unless the contrary appears, and the fact husband was permitted to discharge the debt by "meager installments" did not relieve him from this obligation. To hold otherwise would give the wife less than the half of the property value to which she was entitled by law. (*Wuest* v. *Wuest, supra,* 72 Cal.App.2d at p. 112.)

Here, as in *Wuest,* James did not expressly waive the right to share equally in the division of the community property. Nor can we imply a waiver from his receiving a bargained-for benefit from reduced child support obligations. The trial court has expressly stated it found no support for the theory James may have waived interest/equality in exchange for Billie's waiver of spousal support and this finding is supported by the record. Billie's procurement of an agreement ostensibly giving her sole control over the disposition of the marital residence should it become necessary to use it as the vehicle to satisfy James's award, seems more the product of his confidence in Billie's good faith and his lack of legal counsel than an expression of his willingness to accept less than an equal property division. In economic terms, the value of his award over the years could be eroded almost completely by Billie's open-ended interpretation, rendering James's award illusory and permitting her to acquire James's community share without compensation.

### III

In *Wuest,* the Court of Appeal merely modified the judgment to include an award of interest, a figure easily ascertainable *and* suitable to the facts of that case to achieve an equal division. Here, however, we are uncertain of the equities. It is clear the parties contemplated the award would be paid from an eventual sale of the residence after a period of time during which Billie would have the exclusive right to possession. On appeal, Billie states the parties always intended the proceeds from the sale of the residence to be divided equally.[4] She cites no facts to support this statement, although we are cognizant this comports with the *Duke* decision and its progeny. Moreover, there are no facts on this record to show whether the value of a one-half equity share of this residence increased due to inflation in the marketplace at a greater or lower rate than the appellant's legal interest on judgments during the same time.

---

[4] We note, however, she made no offer at the trial court proceedings to compensate James based on the appreciated value of the community equity.

James only sought interest on the theory this was a money judgment. However, the actual appreciation in value of the residence may be less than the accumulated interest. In light of the parties' ambiguous stipulated judgment and James's limited request for interest at the legal rate, we believe it more equitable to remand this matter to the trial court for a comparison of the relative values of James's award computed as a 1981 money judgment and the fair market appreciated value of the residence as of October 26, 1987. Once determined, the court shall modify its order to award James the lesser of the two amounts. That will be either the present dollar award to bear interest at the legal rate from the date of the interlocutory judgment, or an award based on the October 26, 1987, appreciated value of James's undistributed one-half interest.[5]

## DISPOSITION

That portion of the order denying postjudgment interest from the entry of the interlocutory judgment of dissolution is reversed and the trial court is directed to conduct further proceedings consistent with this decision. In all other respects, the judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

---

[5] We are aware that our decision imposes an extra task on an already burdened family law court. It is, we believe, one which could have been avoided by more careful consideration of the agreement by the court when it was incorporated into the judgment during the default proceeding.