Filed 8/7/24  Marriage of Pollard CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of ERIC and JOLYNN POLLARD.  _____  ERIC POLLARD,<br><br>        Appellant,<br><br>    v.<br><br>JOLYNN SCHARRER,<br><br>        Respondent. | B336037<br><br>(Los Angeles County Super. Ct. No. GD046260) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Sarah J. Heidel, Judge.  Modified and affirmed.

Gary W. Kearney for Appellant.

Schweitzer Law Partners and Mane Hakobyan for Respondent.

_____

This is the second appeal brought by Eric M. Pollard (Eric) against his former wife Jolynn Pollard (Jolynn) following the dissolution of their marriage 13 years ago.[1]  In this appeal, Eric is challenging the family court's order delaying the accrual of postjudgment interest on his share of net equity in the family home until after the home is appraised.[2]  The order is modified to award postjudgment interest to Eric accruing from January 1, 2018, and otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Eric and Jolynn ended their marriage on July 19, 2011. They had joint legal custody of their two daughters.  Jolynn had primary physical custody of the girls.

The parties' judgment of dissolution incorporated a Dissolution Settlement Agreement (settlement agreement) that stipulated:  "JoLynn will remain in the family home . . . until at least such time as the youngest child of the parties is twenty years old or leaves the family home to attend post-high school education, whichever occurs latest.  [Jolynn] agrees to pay all expenses associated with living in the home, including but not

---

[1] Jolynn's surname is now Scharrer, but we will continue to refer to both parties by their first names for clarity and simplicity.

[2] Eric attempted to bring another appeal (B324657) from an order concerning unpaid child support and accrued interest, which we dismissed on August 8, 2023, for lack of jurisdiction because the notice of appeal was not timely filed.

[3] To the extent they are relevant, the facts in this opinion are taken from our unpublished opinion in *In re Marriage of Pollard* (Dec. 17, 2021, B310862) [nonpub. opn.].)

limited to the mortgage payments, taxes, insurance, utility bills, and maintenance costs.

"[T]he estimated [market] value of the [family home] as of October 22, 2010 is $827,000.00.  At such time as the youngest child turns twenty or leaves the family home to attend post-high school education, whichever occurs latest, the home will be sold and the net equity will be equitably divided between the parties as follows:  seventy percent (70%) to JoLynn; thirty percent (30%) to Eric.  Eric transferred title to reflect that Jolynn legally owns 70% of the [family home] immediately upon the execution of this agreement.  Should Jolynn desire to purchase Eric's 30% interest at the date the home is to be sold, JoLynn will obtain a home equity loan and will pay the [*sic*] Eric his share of the above stated equity."  Both parties signed the settlement agreement.

In 2016, the parties took out a loan on the family home to fund the daughters' college education.  Eric agreed to lessen his share in the net equity from 30 to 25 percent because Jolynn " 'took on the responsibility' " for the loan.  (*In re Marriage of Pollard*, *supra*, B310862).)

**A.     Eric's First Appeal B310862**

The condition precedent to the sale of the family home occurred on January 1, 2018; the parties' younger daughter turned 20 years old the day before.  According to Eric, Jolynn did not list the home for sale or obtain a home equity loan to buy out Eric's share.  According to Jolynn, she opted to buy out Eric's 25 percent share of the home's net equity, but they could not agree on an amount.

On September 11, 2020, Eric filed a request for order seeking "one of two reliefs:"  (1) "Order the [family home] sold and pay my share of the sale net equity as per the terms of the

judgment or," (2) "Pay my share of the equity of the [family home] as of January 1, 2018 plus legal interest thereon."

A hearing was held on Eric's request on January 15, 2021. When the hearing concluded, the family court ordered in pertinent part: (1) "The parties are to attempt to select, by January 21, 2021, a mutually acceptable real party appraiser to determine the fair market value of the [family home] as of January 1, 2018, the date the youngest child attained the age of 20 years," (2) "Once the [family home] appraisal is received, the Parties shall calculate the net equity of the [home] which is the fair market value determined by the appraiser less the outstanding [mortgage] loan balance secured by the [home] as of January 1, 2018," and (3) Jolynn "is ordered to then forthwith pay to [Eric] twenty-five percent (25%) of the net equity" in the home. There is no mention of prejudgment interest in the written order after hearing drafted by Eric's counsel and signed by Jolynn's counsel and the court.

Eric filed an ex parte request for clarification of the order, asking whether, upon the effective transfer of the family home, he was entitled to receive: (1) postjudgment interest accruing from January 1, 2018, to the date he was paid his net equity share, or (2) reasonable rental value of Jolynn's use of the home pursuant to *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

The family court denied Eric's request for ex parte relief, finding the written "order after hearing submitted by [Jolynn's] counsel as Exhibit A to the responsive declaration to this ex parte is accurate to the order of the court."

Eric appealed from the January 15, 2021 order, contending the family court erroneously interpreted the judgment as designating January 1, 2018, as the date of the appraised

4

valuation of the family home in calculating its net equity and improperly denied him postjudgment interest.[4]  We affirmed. During the hearing, Eric had neither contested the January 1, 2018 valuation date nor asked the family court to consider or rule on the question of postjudgment interest.  (*In re Marriage of Pollard*, *supra*, B310862).)

### B.    Eric's Present Appeal B336037

As of October 2023, an appraiser had not been chosen, the family home had not been appraised, and the net equity in the home had not been determined.

On October 11, 2023, Jolynn filed a request for order asking the family court to determine:  (1) the net equity in the family home as of January 1, 2018, (2) the amount Jolynn would have to pay to buy out Eric's share of the net equity, (3) the amount of Eric's unpaid child support, and (4) the offset of the child support arrears against the buy-out amount.  In her supporting declaration, Jolynn calculated Eric's buy-out amount (25 percent net equity) without postjudgment interest.  Jolynn did not compute an offset for Eric's unpaid child support payments.

In his responsive declaration, Eric estimated the amount of his 25 percent net equity and included the postjudgment interest that had accrued from January 1, 2018.  Eric calculated the sum due him from Jolynn, offset by his unpaid child support.

A hearing on Jolynn's request was held on December 13, 2023.  At its conclusion, the family court appointed an appraiser "to conduct an appraisal of the [family home], and that

---

[4] Although the order after hearing was filed on January 29, 2021, the notice of appeal is from the "January 15, 2021" order. For clarity and consistency, we refer to this order as the January 15, 2021 order, as we did in our prior opinion.

determination of the buyout amount [shall] then proceed pursuant to the Court's 1/29/21 order."  The court also ordered "[p]ursuant to the 1/29/21 order interest shall accrue after the appraisal of the" family home.[5]  The order made no mention of an offset for unpaid child support.

Eric filed a timely notice of appeal from the December 13, 2023 order.

## DISCUSSION

Eric contends the family court violated Code of Civil Procedure section 685.020 by denying him postjudgment interest on his share of the family home's net equity accruing from January 1, 2018, until the home was appraised.[6]  Eric's issue presents two subsidiary questions:  (1) Is Eric entitled to receive postjudgment interest?  (2) If so, when did that interest begin to accrue?

As our answers involve statutory interpretation, independent review is required.  (*Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 723; *In re Marriage of Dalgleish & Selvaggio* (2017) 17 Cal.App.5th 1172, 1177–1178 (*Dalgleish & Selvaggio*) ["[T]he issue of when interest begins to accrue on an amount included in a monetary judgment is a question of law that we review de novo."].)

---

[5] The record does not contain a reporter's transcript of the December 13, 2023 hearing.

[6] In his opening brief Eric also argues he is entitled to postjudgment interest accruing from July 19, 2011, the date of the judgment of dissolution.  However, Eric's reply brief appears to clarify he is seeking interest accruing from January 1, 2018, not from July 19, 2011.

### A. Eric Is Entitled To Receive Postjudgment Interest on the Money Judgment

" 'Money judgment' means that part of a judgment that requires the payment of money." (Code Civ. Proc., § 680.270.) "[I]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (Code Civ. Proc., § 685.010, subd. (a)(1).)

The judgment of dissolution, as amended, awarded Jolynn a sum equal to 75 percent and Eric 25 percent of the net equity in the family home as determined by an appraisal based on the January 1, 2018 valuation. When the family court, as here, orders an equalizing payment rather than making an in-kind division of nonmonetary community property, that award "is a money judgment on which interest accrues from the date of its entry." (*In re Marriage of Pollard* (1988) 204 Cal.App.3d 1380, 1382 (*Pollard*); accord, *Dalgleish & Selvaggio* (2017), *supra*, 17 Cal.App.5th at p. 1178.) Not to award postjudgment interest in a case like the one at bar, as the court explained in *Dalgleish & Selvaggio* at page 1178, "would have permitted the wife to enjoy the use of the home and benefit from the appreciation on its value while depriving the husband of the use of his money award." The same principle applies here: Eric was entitled to interest on the past-due equalizing sum at the statutory rate of 10 percent per annum.

In response, Jolynn argues this case is akin to *In re Marriage of Teichmann* (1984) 157 Cal.App.3d 302 (*Teichmann*) in which a couple's interlocutory dissolution judgment awarded the husband a business partnership and ordered the sale of the family home. The wife was to receive $89,000 from the sale proceeds and the husband $3,100 to balance the property

7

division, with the remaining proceeds to be divided equally. (*Id.* at pp. 304–305.) The wife was to remain in the home until its sale, which did not occur until 19 months later. Following the sale, the wife filed a cost bill seeking $10,282.98 as accrued interest on the $89,000 award. The family court ordered the cost bill stricken, and the wife appealed. (*Id.* at p. 305.)

On appeal, the *Teichmann* court held the wife's exclusive use and enjoyment of the family home for 19 months until its sale with an equal share of any appreciation in value at the time of the sale was sufficient compensation in lieu of interest. (*Teichmann, supra*, 157 Cal.App.3d at p. 307.) The court further held the $ 89,000 award was not a money judgment. (*Ibid.*) It was neither due nor payable by the husband but was to be distributed to the wife from the net proceeds of the eventual sale. (*Ibid.*) "[S]ince there exists neither a money judgment nor judgment debtor, no recoverable interest could or did accrue." (*Teichmann*, at p. 308.)

Jolynn urges the judgment in this case, like the judgment in *Teichmann*, was not a money judgment because it did not require her to make any payment to Eric. Instead, she argues, the judgment provided for the sale of the family home when the condition precedent was met, the 75 percent–25 percent distribution of net equity between the parties following the sale, and the option for Jolynn to buy out Eric's 25 percent share.

We are not persuaded, first because we agree with *Pollard* and *Dalgleish & Selvaggio* that the 75 percent–25 percent equalizing payment was a money judgment. Second, Jolynn maintained throughout the proceedings that she intended to buy out Eric's share, for which she was required *to pay him* 25 percent of the family home's net equity based on the

8

January 1, 2018 valuation.  Further, the *Teichmann* court concluded the wife's sole use and enjoyment of the family home for 19 months and receipt of an equal share of the home's appreciation when sold were sufficient compensation without postjudgment interest.  Here, Jolynn has benefitted from sole use and enjoyment of the family home for years and is to receive all its appreciation in value when sold.  In arguing Eric should be deprived of postjudgment interest, Jolynn simply wants to have her cake and eat it too.

**B.     Interest Begin To Accrue From the January 1, 2018 Valuation**

In general, "interest commences to accrue on a money judgment on the date of entry of the judgment."  (Code Civ. Proc., § 685.020, subd. (a).)  This is a unique case.  An argument that interest began to accrue when the judgment of dissolution was entered in 2011 would be hard to make, given the condition precedent had not yet occurred and no equalizing payment was then due.  While the judgment contains no fixed date for the sale of the family home or for payment of the 25 percent buy out, the parties agree the amount of net equity in the family home was fixed as of January 1, 2018.  In our view, it is from that date, not "after the appraisal of" the family home, that postjudgment interest shall accrue.

Jolynn resists this conclusion by relying on collateral estoppel or issue preclusion, which prohibits relitigation of an issue that was previously litigated because the issue has been conclusively resolved.  There are four essential elements of collateral estoppel.  It applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the

9

first suit or one in privity with that party." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)  Jolynn, as the party who asserts the bar of collateral estoppel, bears the burden of demonstrating each of its elements.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 617.)

Not all the prerequisite elements for application of collateral estoppel have been met in this case.  To be sure, the parties have been the same throughout the proceedings.  The same issue—whether Eric's share should be subject to postjudgment interest from January 1, 2018—was raised in Eric's initial request for order, in his ex parte request for clarification of the January 15, 2021 order, and lastly in his responsive declaration to Jolynn's request for order, which led to the December 13, 2023 order and instant appeal.

However, the lynchpin precluding the application of collateral estoppel here is the element "actually litigated."  An issue is "actually litigated" for purposes of collateral estoppel only if it was properly raised, submitted for determination, and decided in the prior proceeding.  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511–512.)  Whether Eric should have been awarded postjudgment interest was not actually litigated in the first two proceedings.  In our earlier opinion we noted his entitlement to postjudgment interest was one of two "reliefs" Eric sought in his initial request for an order.  But, the issue was not raised at the January 15, 2021 hearing, and was not part of the family court's oral order after counsels' argument or the written order drafted by Eric's counsel.  In denying Eric's ex parte request for clarification that followed, the family court indicated what had been determined at the January 15 hearing was

10

accurately reflected in the written order.  The order did not dispose of the issue of Eric's postjudgment interest.  Because the issue was not "actually litigated," it was not necessarily decided or resolved by a final decision on the merits.  There was no preclusive effect in the subsequent litigation of December 13, 2023.

## DISPOSITION

The December 13, 2023 postjudgment order is modified to require the assessment of postjudgment interest of 10 percent per annum commencing January 1, 2018.  In all other respects the order is affirmed.  The parties are to bear their own costs on appeal.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

11