Filed 11/1/17; Modified and Certified for Pub. 11/30/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| In re the Marriage of Stacy Dalgleish and Piero Selvaggio. _____ STACY DALGLEISH, Plaintiff and Appellant, v. PIERO SELVAGGIO, Defendant and Appellant. | B266579 (Los Angeles County Super. Ct. No. BD430584) |
|---|---|

APPEALS from orders of the Superior Court of Los Angeles County. Ralph C. Hofer, Judge. Affirmed in part and reversed in part with directions.

Law Office of Leslie Ellen Shear, Leslie Ellen Shear and Julia C. Shear Kushner for Plaintiff and Appellant.

Law Offices of James R. Eliaser, James R. Eliaser and Joanne D. Ratinoff for Defendant and Appellant.

Stacy Dalgleish, the petitioner in a marital dissolution proceeding, and Piero Selvaggio, the respondent in that proceeding, both appeal from postjudgment orders of the trial court. Those orders enforced one of the terms of the parties' stipulated judgment, which required an equalization payment from Selvaggio to Dalgleish following a joint appraisal of certain real property. Dalgleish claims that the trial court erred in awarding interest on that payment from the date of the trial court's ruling rather than the date the payment was due, about 19 months earlier. In his cross-appeal, Selvaggio claims that the trial court erred in finding that the appraisal in fact was a joint appraisal as required by the judgment. We agree with Dalgleish's claim and reject Selvaggio's. We therefore reverse the trial court's orders only with respect to the date when interest on the equalization payment began to accrue.

## BACKGROUND

### 1. *The Appraisal*

On December 7, 2009, the parties executed and the trial court approved a 37-page "Stipulated Further Judgment on Reserved Issues" (Judgment) addressing property division and other topics. The Judgment stated that it was "the entire agreement of the parties exclusive of the issues of custody and visitation." The Judgment was filed on December 9, 2009.

In paragraph 1.C.iii, under the heading, "Equalizing Payments," the Judgment directed that: "The parties shall forthwith engage a joint real estate appraiser to appraise the real properties located at 3115 and 3125 Pico Boulevard, Santa Monica, California as of September 2, 2008 and their fair market values at the time of the Transmutation Agreement executed by the parties on May 1, 2003. If there was an increase in the fair

2

market value of said properties between those two dates, then Respondent shall, within ten (10) days of receipt of the appraisal report, pay Petitioner, tax free, a sum equal to one-half ($^1/_2$) of the increase in value of said properties as determined by the appraiser." The Judgment did not provide any right or describe any procedure to challenge the results of the joint appraisal for purposes of calculating this payment (the Equalization Payment).

In late 2012 and early 2013, Judith Forman, counsel for Dalgleish, and James Eliaser, counsel for Selvaggio, had various communications with each other and with Larry Sommer, an appraiser, about retaining Sommer to conduct an appraisal of the properties on Pico Boulevard (the Pico Property). Sommer did not send out an engagement letter, but he understood that he had been retained by both parties and proceeded to work on appraising the Pico Property. During the course of his work he communicated with both parties jointly concerning the status of the project and when he would finish.

Sommer completed his work on the appraisal of the Pico Property (the Appraisal) and prepared a report that he sent to both parties on July 26, 2013. The Appraisal valued the Pico Property at $1,618,542 as of May 1, 2003, and $3,810,645 as of September 2, 2008. One-half the amount of the appreciation was therefore $1,096,051.50.

After the Appraisal was completed, the parties had various communications with each other about clearing title on the Pico Property. Then, in February 2014, a business lawyer for Selvaggio wrote to Sommer, raising questions about the methodology and the results of the Appraisal. In communications with Forman, Selvaggio's lawyer also questioned whether the parties had in fact jointly retained Sommer. The

parties had further communications about the Appraisal and the Equalization Payment, but reached no agreement about the adequacy of the Appraisal and whether Sommer had been jointly retained.

**2.    *Dalgleish's Request for Order Enforcing the Judgment***

On August 6, 2014, Dalgleish filed a Request for Order (RFO), seeking enforcement of the Judgment with respect to the Equalization Payment.  The RFO asked the trial court to find that the "amount of $1,095,000 was due from Respondent to Petitioner on August 5, 2013 under Paragraph 1.C.iii of the Judgment," and that under Code of Civil Procedure[1] section 685.010, "statutory interest at the rate of 10% per annum has been accruing on the amount of $1,095,000 since August 5, 2013 and shall continue to accrue until paid in full."  Selvaggio opposed the motion on the ground that Dalgleish had never agreed to retain Sommer and the Appraisal was therefore not a joint appraisal as required by the Judgment.

The court held a hearing on the RFO on October 31, 2014.  The court announced its tentative findings that:  (1) there was no right under the Judgment to challenge the Appraisal; (2) Sommer was hired as a joint appraiser pursuant to paragraph 1.C.iii of the Judgment; and (3) even if there had been no agreement to hire Sommer, Selvaggio was equitably estopped from challenging whether the Appraisal was joint.  During the argument that followed the court's tentative ruling, Selvaggio's counsel, Eliaser, made a request to cross-examine Sommer.  After some discussion

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

4

about the consequences of Selvaggio's failure to file a written request for cross-examination under Family Code section 217, the court asked Dalgleish's counsel, Forman, whether she was willing to agree to an evidentiary hearing at which Sommer would testify, or whether she was satisfied with the record as it stood. The court stated that, if it were to enter a judgment without further proceedings, interest would run from the current date, "not last summer." Forman asked the court to confirm that, if she agreed to a further evidentiary hearing and Dalgleish prevailed, interest would be retroactive to October 31, 2014. The court replied, "Yes, it would be retroactive to today." Forman stipulated to the further hearing on Dalgleish's behalf.

The evidentiary hearing took place on March 11, 2015. Sommer testified that he understood he was jointly retained by Forman and Eliaser. At the conclusion of the hearing, the trial court announced its findings that the Appraisal was joint and that Selvaggio was to pay Dalgleish one-half of the $2,192,103 appreciation amount pursuant to paragraph 1.C.iii of the Judgment. The court stated that, although the Judgment required payment within 10 days, "[t]he court can alter that to be 90-day period with interest accruing as of October 31, 2014 pursuant to the court's prior order."

Eliaser asked to be heard on the issue of interest. He argued that interest could start to accrue only "from the date on which there is a ruling as to a sum certain," and that there was no sum certain until the court's ruling that day. The court accepted that argument and modified its ruling to order interest on the Equalization Payment beginning March 11, 2015. After some additional argument on the

5

issue of interest, the court explained its reasoning that "today's ruling is a type of final judgment at which time the court is entering a specific amount of money that is due," and that therefore interest could not have accrued earlier.

The court declined further briefing on the issue. Dalgleish nevertheless filed a motion to change the court's order with respect to the date when interest began to accrue. After a hearing on May 12, 2015, the court denied Dalgleish's motion. The court found that Selvaggio "had a good faith basis to challenge the Appraisal such that there was no amount certain for a monetary judgment in existence until the court's ruling on March 11, 2015." The court also stated that "the judgment in terms of the amount of appreciation was contingent and there was no amount certain when the judgment was entered back in 2009. And the court has also found that the judgment was not self-executing, given these particular set of facts."

The court subsequently filed written orders setting forth its findings of fact and rulings on the issues of the joint Appraisal and interest on the Equalization Payment. The court found that "[t]here is ample evidence to determine through words, emails, and conversations and exchanges between the parties and the appraiser that the objective intent of the parties was to, and they did, jointly retain Mr. Sommer as their expert." Based upon the Appraisal and paragraph 1.C.iii of the Judgment, the court therefore found that the increase in fair market value of the Pico Property

from May 1, 2003, to September 2, 2008, was $2,192,103, and that Selvaggio owed half that amount to Dalgleish.

Consistent with the trial court's oral findings at the May 12, 2015 hearing, the court's final order also stated that the "March 11, 2015 Ruling is a type of final judgment under CCP §665.020(a)[2] at which time the Court is entering a specific amount of money that is due, and therefore interest entered under this Code section could not have accrued prior to [March 11, 2015]." The court ordered that the amount of $1,096,051.50 was payable from Selvaggio to Dalgleish, with interest accruing at the statutory rate of 10 percent from March 11, 2015.

## DISCUSSION

1.  ***Interest Began to Accrue on the Amount of the Equalization Payment When It Was Due Under the Judgment***

The parties agree that the issue of when interest begins to accrue on an amount included in a monetary judgment is a question of law that we review de novo. (See *Chodos v. Borman* (2015) 239 Cal.App.4th 707, 712 (*Chodos*).) We also independently interpret a marital settlement agreement incorporated into a dissolution judgment unless there is conflicting parol evidence affecting its meaning. (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518.) Here, there is no parol evidence to interpret. We therefore apply a de novo standard to our review of the trial court's order concerning the

---

[2] The court apparently intended to cite section 685.020, subdivision (a).

relevant date for computing interest on the Equalization Payment.

> **a.** ***The $1,096,051.50 Equalization Payment is a money judgment to which statutory interest applies***

Section 685.020 provides that "interest commences to accrue on a money judgment on the date of entry of the judgment." Paragraph 1.C.iii of the Judgment required the payment of money by Selvaggio to Dalgleish. That portion of the Judgment was therefore a "money judgment" for purposes of section 685.020. (See § 680.270; *In re Marriage of Pollard* (1988) 204 Cal.App.3d 1380, 1383 (*Pollard*).)

In *Pollard,* a husband and wife reached an agreement on the division of equity in their residence that was incorporated into a judgment of dissolution. (*Pollard, supra,* 204 Cal.App.3d at p. 1382.) The wife was to continue to live in the residence, and the husband was to receive $33,429.50 as his equity share. (*Ibid.*) However, the wife did not have any present ability to pay that sum and minor children continued to live with her. Thus, the parties agreed that the sum would be due upon sale of the home. Their agreement gave the wife sole discretion to decide when to sell. (*Ibid.*) Over six years later, the wife still had not sold the residence, and the husband sought interest on the $33,429.50. (*Id.* at pp. 1382–1383.)

The court held that the $33,429.50 equalization payment was a "money judgment on which interest accrues from the date of its entry, in the absence of an express or implied agreement by the parties to the contrary." (*Pollard, supra,* 204 Cal.App.3d at p. 1382.) A contrary ruling would have permitted the wife to enjoy the use of the home and benefit from the appreciation on its

8

value while depriving the husband of the use of his money award. (*Id.* at pp. 1382–1383.)  The court cited *Wuest v. Wuest* (1945) 72 Cal.App.2d 101 (*Wuest*), which similarly held that a payment in lieu of a division of community property was a money judgment that accrued interest from the date of entry.  (*Pollard,* at pp. 1384–1385.)

The parties here similarly agreed to a judgment that included an Equalization Payment to compensate Dalgleish for her share of the appreciation of the Pico Property.  Interest on the payment began to accrue on the date it was due.[3]  A contrary ruling would deprive Dalgleish of the value of the money she was due from her share of the Pico Property while Selvaggio continued to enjoy the benefit of appreciation on that property.

---

[3] The parties agreed in their stipulated Judgment that the Equalization Payment was to be due, not on the date the Judgment was entered, but 10 days after receipt of the joint Appraisal.  This is consistent with the general equitable principle that " 'a person *who does not know what sum is owed* cannot be in default for failure to pay.' "  (*Lucky United Properties Investment, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 652–653 (*Lucky*), quoting *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 906.)  Assessing interest from the date the payment was required under the Judgment is also logical, as otherwise Selvaggio would be charged with interest before a payment was actually due.  (Cf. § 685.020, subd. (b) ["Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due"].)  In any event, Dalgleish seeks interest only from August 5, 2013—10 days after receipt of the Appraisal—and we therefore need not consider any argument that interest on the Equalization Payment should have begun to accrue at the time the Judgment was entered in 2009.

Selvaggio's reliance on *In re Marriage of Teichmann* (1984) 157 Cal.App.3d 302 (*Teichmann*) is misplaced. In that case, an interlocutory judgment of dissolution provided that the parties' residence was to be sold. After the sale, the wife was to receive $89,000 from the proceeds and the husband $3,100. After those payments, the balance of the equity was to be divided equally between the parties to effectuate " 'an exactly equal division of the community property.' " (*Id.* at p. 305.) However, because of market conditions the home was not sold for another 19 months. The wife, who continued to live in the residence until the sale, sought interest on the $89,000 from the date of the interlocutory judgment. (*Ibid.*)

The court held that the $89,000 sum was not a money judgment that accumulated statutory interest. The court distinguished other cases, including *Wuest,* in which "the recipient spouse was to receive payments directly from the other spouse." (*Teichmann, supra,* 157 Cal.App.3d at p. 307.) In contrast, the stipulated judgment in *Teichmann* simply divided the parties' property. (*Ibid.*)

Here, as in *Wuest,* the Judgment did not merely divide the parties' property but required one spouse, Selvaggio, to make an equalization payment of a specific amount to the other, Dalgleish. Moreover, unlike the wife in *Teichmann* who "shared equally the benefit of the increasing value of the home due to the 19 months' appreciation . . . and in the interim had full use and enjoyment of the property" (*Pollard, supra,* 204 Cal.App.3d at p. 1384), Dalgleish did not obtain any benefit from appreciation in the Pico Property after September 2, 2008, and did not enjoy any use of the property.

10

The trial court here apparently concluded that the relevant "judgment" for purposes of computing interest was not the parties' stipulated Judgment but rather its own March 11, 2015 ruling on Dalgleish's RFO. The court characterized that ruling as "a type of final judgment" that set the amount of money that was due and found that interest therefore could not have accrued earlier.

That ruling was erroneous. The trial court's March 11, 2015 order did not result in a new judgment, but simply enforced the already existing Judgment. For purposes of accruing interest, the "date of entry of the judgment" is the critical date, not the date when any postjudgment challenges might be resolved. (§ 685.020, subd. (a).)[4] Thus, the general rule is that "[a] judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack." (*Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439, 442.) Even when a judgment is modified on appeal, the "new sum draws interest from the date of entry of the original order, not from the date of the new judgment." (*Ibid.*) Only if a judgment is reversed on appeal does the new award subsequently entered by the trial court bear interest from the date of the new judgment. (*Id.* at pp. 442–443; see *Chodos, supra,* 239 Cal.App.4th at pp. 712–713.)

Although the court in *Wuest* did not discuss this rule, the result in that case was consistent with it. The court concluded that interest began to accrue on the husband's equalization debt when the original judgment was entered, even though the wife

_____

[4] Unless the clerk maintains a judgment book, the date of entry of a judgment is the date it is filed with the clerk. (§ 668.5.)

11

subsequently obtained a revised judgment after successfully challenging the portion of the original judgment that permitted the husband to pay his obligation in installments.  (See *Wuest, supra,* 72 Cal.App.2d at pp. 111–112.)

### b. *The appraisal procedure in the Judgment set a specific sum for payment*

Selvaggio also argues that interest could not accrue on the Equalization Payment until the trial court's March 11, 2015 ruling because, until that date, the amount of the payment was not a "sum certain" on which interest could be calculated. Although Selvaggio cites no statutory or case authority for this argument, it is apparently based on the equitable principle discussed above that a party cannot be in default for failure to pay a judgment until the party knows what amount he or she owes.  (See *Lucky, supra,* 213 Cal.App.4th at pp. 652–653.)  That principle does not apply here, as the Appraisal set the amount that Selvaggio owed.

The fact that the Appraisal established the specific amount of the Equalization Payment after the Judgment was already entered did not make a further court order necessary for the accumulation of interest.  The Judgment did not contemplate any such order.  It established no procedure to calculate the Equalization Payment other than the joint appraisal itself.  Nor did the Judgment anticipate further negotiation to set the amount.  By specifying a joint appraisal, the parties required agreement on the selection of the appraiser, not on the *amount* of the appraisal.  The parties further agreed that the Judgment

12

"constitutes the entire agreement of the parties exclusive of the issues of custody and visitation."[5]

A judgment may be final while still contemplating further acts by the parties to effectuate the judgment's terms. For example, the parties here included a typical term requiring them to "promptly execute all documents and instruments necessary or convenient to vest title and estates in the other as provided in this Stipulated Further Judgment to effectuate its purpose and intent." When such terms are included and a party fails to comply, further court action might be necessary to enforce the judgment. But the fact that, as here, it is necessary to file a postjudgment motion to obtain relief that the judgment requires does not affect the finality of the judgment for purposes of accruing interest, even if there is a good faith basis for the other party to oppose the motion.

Here, the Appraisal established the precise amount of the Equalization Payment. In ruling on Dalgleish's RFO, the trial court merely resolved a conflict over whether that amount was in fact *due*. In the analogous area of prejudgment interest under Civil Code section 3287, subdivision (a), certainty about the sum

---

[5] In this respect, the appraisal process in the Judgment was similar to the typical procedure in which costs and attorney fees are ordered as part of a judgment but the amount of the costs and fees is not determined until after the judgment is entered. For prejudgment costs and fees set as a result of such a process, interest begins to accrue on the date the judgment is entered even though the actual amounts are determined later. (See *Lucky, supra,* 213 Cal.App.4th at p. 650.) Even postjudgment enforcement costs are incorporated into the principal amount of the judgment and accumulate interest when awarded. (*Id.* at pp. 651–654.)

13

owed is "absent when the *amounts* due turn on disputed facts, but not when the dispute is confined to the rules governing liability." (*Olson v. Cory* (1983) 35 Cal.3d 390, 402, italics added; see *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 574 ["A legal dispute as to the plaintiff's entitlement to the amount awarded does not render the damages uncertain"]; *Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958 ["it is clear that Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining whether prejudgment interest is mandated"].)[6]

The same principle applies here. Selvaggio disputed whether the Appraisal met the requirements of the Judgment. He did not dispute the *amount* of the Appraisal, and the Judgment gave him no right to do so. Having lost his argument

---

[6] Although we conclude that *postjudgment* interest was legally required on the Equalization Payment pursuant to the Judgment under Code of Civil Procedure section 685.020, subdivision (a), we note that, even if the trial court's March 11, 2015 ruling were considered to be a separate, operative "judgment" for purposes of setting the Equalization Payment, *prejudgment* interest on that payment would have been appropriate under Civil Code section 3287, subdivision (a). That subdivision provides that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." This provision reflects the general principle that "interest starts to accrue on the date that the amount owed has been fixed or can be determined with certainty." (*Lucky, supra,* 213 Cal.App.4th at p. 653.) The amount that Selvaggio owed was fixed by the Appraisal.

14

that the Appraisal was not a joint appraisal as required by the Judgment, he owed interest on the amount that the Appraisal set from the date that the Equalization Payment was due.

### c. *The trial court did not have discretion to adopt a different date for the accrual of interest*

The trial court concluded that it was not required to award interest from August 5, 2013, but that the interest award was "discretionary based on various factors that the court has described." That conclusion was inconsistent with the law. The accrual of interest on a money judgment is governed by statute. (See § 685.020.) The court did not have discretion to alter the statutory date that interest began to accrue. (*In re Marriage of Hubner* (2004) 124 Cal.App.4th 1082, 1091.)

Selvaggio argues that the trial court had the discretion to change its October 31, 2014 decision that interest would be calculated from that date. But that argument does not address whether the trial court had the discretion to order interest only from March 11, 2015 (or, indeed, even from October 31, 2014, absent a stipulation by the parties). Selvaggio does not argue that Dalgleish agreed with the March 11, 2015 date, nor could he do so based on the record. The trial court did not have the discretion to order a date for the accrual of interest different from the statutory date absent agreement to that date by Dalgleish.

### 2. *Selvaggio Has Failed to Identify Error in the Trial Court's Ruling that the Appraisal Was a Joint Appraisal as Required by the Stipulated Judgment*

In his cross-appeal, Selvaggio argues that the trial court erred in finding that the Appraisal was joint. However, he supports this argument with only a half-page discussion in his opening brief that refers to just four items of evidence: (1) there

15

was no engagement letter or other formal written agreement with Sommer; (2) only Selvaggio paid Sommer; (3) Forman "never confirmed" that she agreed Sommer would be the joint appraiser; and (4) Forman was "cagey and evasive" in her commitment to retain Sommer. Selvaggio refers to the same evidence in his one-page reply brief in arguing that "substantial evidence supports Cross-Appellant's assertion that it was not a joint appraisal."

Selvaggio misunderstands his task on appeal, and in doing so fails to support his cross-appeal with sufficient citations to, and discussion of, evidence in the record to merit consideration of the appeal. As with other factual findings, we review the trial court's ruling that the parties jointly hired Sommer under the substantial evidence standard. (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660 (*Jessup Farms*).) Under that standard, the power of this court " 'begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below." (*Ibid.,* quoting *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) We "view the evidence in the light most favorable to the *prevailing party*, giving [Dalgleish] the benefit of every reasonable inference and resolving all conflicts in [her] favor." (*Jessup Farms*, at p. 660, italics added.)

Selvaggio ignores this standard by citing only selected items of evidence that he claims support *his* interpretation of the facts. He does not acknowledge contrary evidence that supports Dalgleish's position and therefore never addresses the real issue on appeal, which is whether that evidence is sufficient to support the trial court's ruling in *Dalgleish's* favor. That failure results in the forfeiture of Selvaggio's cross-appeal. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [" 'an appellant who contends that

16

some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived' ”].)

Even if Selvaggio had not forfeited his argument, only a brief review of the trial court's findings is necessary to find abundant evidence supporting the court's ruling.

The trial court found an implied contract for the joint retention of Sommer based upon the record of the parties' communications. Selvaggio's counsel, Eliaser, first proposed hiring Sommer. Forman said that she wanted to speak with Sommer to discuss, among other things, cost and Sommer's neutrality, as Sommer had previously acted as Selvaggio's “unilateral appraiser.” Forman did speak with Sommer. She testified that she subsequently notified Eliaser that she and Dalgleish “were in agreement that Mr. Sommer should perform the joint appraisal for the parties.” Sommer testified that, after his conversation with Forman, he understood that both Forman and Eliaser were retaining him to prepare the Appraisal. The trial court found that both Forman and Sommer were “credible on this point.”

The trial court noted that Sommer also testified that the reason he did not prepare an engagement letter was because “it slipped his mind and that he felt he did not need a joint retainer agreement because he knew both lawyers well and had worked with them over a course of time and that he started working because he received money to start the project.” The evidence supports that finding. With respect to payment, the trial court found that “[t]here was discussion regarding how [Dalgleish] would reimburse [Selvaggio] for advancing the full amount of the payment up front.” That finding is also supported by the

17

evidence.  Finally, the completed appraisal report stated that it was prepared for both parties, and the report was addressed and sent to both Forman and Eliaser.

This evidence, which Selvaggio does not address, is sufficient to support the trial court's ruling that the Appraisal was joint.  We therefore reject Selvaggio's cross-appeal.

## DISPOSITION

The trial court's orders filed May 29, 2015, and June 17, 2015, are reversed only insofar as they order interest on the $1,096,051.50 Equalization Payment to be calculated from March 11, 2015.  The matter is remanded to the trial court with directions to enter an order awarding Dalgleish interest on the Equalization Payment calculated from August 5, 2013.  In all other respects, the orders are affirmed.  Dalgleish is entitled to her costs on appeal.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

Filed 11/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of Stacy Dalgleish and Piero Selvaggio.<br>_____<br><br>STACY DALGLEISH,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>PIERO SELVAGGIO,<br><br>  Defendant and Appellant. | B266579<br><br>(Los Angeles County Super. Ct. No. BD430584)<br><br>ORDER MODIFYING OPINION AND CERTIFICATION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on November 1, 2017, be modified as follows:

On page 1, the appearances for plaintiff and appellant are to read:

Law Office of Leslie Ellen Shear, Julia C. Shear Kushner and Leslie Ellen Shear for Plaintiff and Appellant.

There is no change in the judgment.

The opinion in the above-entitled matter filed on November 1, 2017, was not certified for publication in the Official

1

Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

ROTHSCHILD, P. J.        CHANEY, J.        LUI, J.