Filed 3/12/25  Chastain v. Chastain CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT L. CHASTAIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SUSAN L. CHASTAIN,<br><br>        Defendant and Respondent. | A168174<br><br>(San Mateo County Super. Ct.<br> No. FAM0101854) |

Plaintiff Robert L. Chastain (Chastain) appeals the trial court's order, following a one-day trial, enforcing the terms of the parties' marital settlement agreement (MSA) and requiring that Chastain pay his former spouse, defendant and respondent Susan L. Chastain (Howard),[1] $183,418.47 owed as his equalizing payment as well as $10,000 in attorney fees.  Chastain contends that the order should be reversed because:  (1) he was induced to sign the MSA through fraud; (2) the court lacked jurisdiction to issue an order as to spousal support; (3) the court exhibited bias against him; and (4) Howard's release of a lien on the parties' former marital home constituted a full release of any amounts he still owed under the MSA.  Chastain further

_____

[1] We refer to respondent as Howard, her new last name, to avoid any confusion.

1

argues that the court destroyed the trial exhibits during the pendency of this appeal, prejudicing him.  We disagree with Chastain's arguments and affirm.

## I.  BACKGROUND

### A.  Dissolution and MSA

Chastain and Howard married in October 1992 and separated in October 2008.  They entered into the MSA in December 2008, and a judgment of dissolution was filed in February 2009.  Following their separation, Howard moved back to Nebraska, where she grew up.  The parties met with a mediator several times to reach the terms of the MSA.  Under the MSA, Chastain received the businesses Chastain Law Group and Chastain Research Group (CRG) as well as the parties' former marital home in Palo Alto (marital home).  Howard waived the receipt of spousal support.  In exchange, Chastain agreed to pay Howard $341,154.50 as an equalizing payment.[2]  The MSA provided that this amount was to be paid in a series of installments, with the last payment due by July 2011.  Chastain did not fully pay by this date but made various payments totaling $157,736.03.

In October 2011, Howard recorded a lien on the marital home in an attempt to obtain the remaining equalizing payments owed by Chastain.  In January 2012, Howard filed a release of abstract of judgment (lien) so that Chastain could sell the home, which he did for $525,000.  Chastain received a profit of $100,000 from the sale and gave Howard $50,000 of it.  This amount is included in the $157,736.03 paid by Chastain to Howard thus far.

The MSA also required that Chastain purchase a new car for Howard

---

[2] In a judgment of dissolution, the trial court must value and divide the community estate of the parties equally.  (Fam. Code, § 2550.)  If circumstances warrant, "the court may award one or more items of the property to one party and require that party to make an equalizing payment to the other."  (*In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880.)

2

of her choosing, " 'the cost not to exceed $36,000 which is an amount equivalent to the value of the vehicles confirmed to [Chastain].' " Chastain later emailed Howard in April 2013 that this amount should have been $18,000 as her half of their vehicles' value. Howard agreed that this was fair. However, instead of buying Howard a new car, Chastain gave her a 2002 Lexus they previously shared and a check for $6,815.

B. Procedural History

In 2017, Howard filed a request for an order to enforce the judgment and terms of the MSA in Nebraska, where she resided. Chastain opposed the request based on lack of jurisdiction and the case was dismissed. In 2021, Howard filed her request for an order in California, which included a demand for attorney fees and costs.

Chastain opposed the request, arguing that the trial court should set aside the equalizing payment due to his recent discovery of fraud perpetrated by Howard. Specifically, he contended that in 2008, Howard falsified CRG's meeting minutes to state that she had a 51 percent interest in the company and "was threatening to leave the state with a controlling interest in CRG . . . unless [Chastain] would agree to her divorce terms." He claimed that he "signed the MSA solely to regain control of his company" and "did not discover that [Howard] had knowingly misrepresented her shareholder interest until years later when he found the fax from [Howard] reflecting that at all relevant times [he] held 51 percent of the shares." Chastain further argued that the trial court should deem his obligations under the MSA satisfied after Howard released her lien on the marital home and accepted $50,000 from the sale of the home as the unpaid balance due to her. Chastain also requested attorney fees and costs from Howard.

A one-day trial was held on May 17, 2023. Howard testified that she

3

never prepared any minutes for CRG's board meetings and did not alter the amount of shares she owned in any of the meeting minutes. She further acknowledged that from 1998 through at least 2005, she held a 51 percent interest in CRG while Chastain held a 49 percent interest.[3] In August 2008, approximately three months before Chastain filed the petition for dissolution, the parties signed shareholder certificates giving Chastain a 51 percent interest in CRG and Howard a 49 percent interest. Howard recalled that this was done at Chastain's request and that he was well aware of this ownership change. With respect to her lien on the marital home, Howard testified that she released the lien in order for the sale of the home to go through so that she "could be paid money towards the equalizing payment."

Chastain testified that in October 2008, Howard told him that she was the majority shareholder in CRG and showed him meeting minutes "that purportedly only gave [him] 49 percent in 1998." He believed he was the majority shareholder and felt "[t]otally ambushed" by her statement. According to Chastain, when he asked Howard to transfer back the 2 percent to him, she declined and responded, " 'I'm afraid you'll fire me if I give you the 2 percent.' " Chastain testified that he signed the MSA to get his company back. He further testified that he did not learn of Howard's fraud until November 2021, after she refiled her request for an order in California. With respect to the sale of the marital home, Chastain contended that he believed Howard's release of the abstract of judgment (lien) in 2012 waived his remaining obligations under the MSA. Chastain further testified that he suffers from PTSD and currently receives "100 percent VA disability."

---

[3] When asked why she had a majority share in a business Chastain founded, Howard testified that she and Chastain believed "there was some advantage of having a female-owned business" at the time.

4

Chastain called two experts. The first expert was an accountant Chastain retained to analyze the equalizing payment. She had never been retained as an expert before and had never previously testified at trial. Based on her calculations, she opined that Chastain had overpaid Howard $98,337. During cross-examination, Howard's counsel asked the expert whether she was aware that certain payments were made to Howard after the dissolution as compensation for her work as an employee of CRG. She responded that she was not and that had she "known about this employment agreement, [she] would have considered things differently."

Chastain next called an expert in computer forensics. Based on his review of the metadata of CRG's meeting minutes, he opined that Howard was the author of two relevant meeting minutes: one from August 1998 that gave Chastain a 51 percent share and Howard a 49 percent share in CRG and another from October 2008 that gave Howard a 51 percent share and Chastain a 49 percent share. The expert clarified, however, that the "author" was determined by the user ID of the computer, meaning that the "author" would still show as Howard if someone else logged onto her computer using her user ID.

Following closing arguments, the trial court found that Chastain owed Howard $183,418.47 as the balance of the equalizing payment and ordered that he pay this amount within 60 days. The court also awarded $10,000 to Howard in attorney fees. The court commented that "the equalization payment accounted for [the marital home] and [the] fact that she waived spousal support." With respect to Chastain's fraud claim, the court found Howard's testimony credible and concluded, based on all the evidence, that "the MSA was negotiated over a meaningful period of time" and that Chastain had "not made a sufficient showing of fraud such that the Court

5

should set aside the MSA." The court noted that Chastain was "an educated and sophisticated individual" and that it "defies credulity" that he "would have signed the MSA without understanding the ramifications." The court further commented that, "if anything[,the mutual waiver of spousal support] was more detrimental to [] Howard than [] Chastain."

With respect to the alteration of certain meeting minutes, the trial court found "credible that [Howard] did not write the minutes based on her testimony." But even assuming Howard *did* alter the minutes and used them to pressure Chastain into signing the MSA, the court concluded that "it was uncontroverted that the stock certificates were signed by him just months earlier giving him the majority of the company" so it was unclear why he would have believed Howard's claim that she held the majority of the shares. Finally, with respect to the lien on the marital home, the court concluded that it did not constitute a modification to the MSA but rather "as [] Howard trying to enforce the [equalizing] payment."[4] Chastain timely appealed.[5]

## II. DISCUSSION

Chastain argues that reversal is warranted because: (1) he was induced to sign the MSA through fraud; (2) the trial court lacked jurisdiction to issue an order as to spousal support; (3) Howard's release of the lien against the marital home absolved him of any outstanding equalizing payments; and (4) the court exhibited "extreme bias" against him. Chastain

---

[4] The trial court also found that Chastain had satisfied his obligation under the MSA with respect to the car after Howard kept the used Lexus and accepted Chastain's check. This is not at issue on appeal.

[5] Chastain appealed from the trial court's May 30, 2023 minute order. In the interests of justice, we construe Chastain's notice of appeal as a premature notice of appeal from the court's findings and order entered on July 11, 2023. (See Cal. Rules of Court, rule 8.104, subd. (d)(2).)

further contends that the court's destruction of trial exhibits prejudiced him on appeal. As discussed below, we are unpersuaded by his arguments.

A. <u>Standard of Review</u>

As with any factual finding, we review the trial court's ruling that Chastain owed Howard a balance of $183,418.47 in equalizing payments under the substantial evidence standard. (*In re Marriage of Dalgleish & Selvaggio* (2017) 17 Cal.App.5th 1172, 1183.) We "view the evidence in the light most favorable to the prevailing party, giving [Howard] the benefit of every reasonable inference and resolving all conflicts in [her] favor." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) "Issues of fact and credibility are questions for the trial court and not the reviewing court. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." (*In re Christina T.* (1986) 184 Cal.App.3d 630, 639.)

B. <u>Chastain's Fraud Claim</u>

In support of his fraud claim, Chastain contends, as he did below, that Howard created false stock certificates and meeting minutes to induce him to sign the MSA to regain control of CRG. He claims that he signed the MSA under "extreme duress" and appears to argue that the trial court erred in believing Howard over him. But credibility determinations are the exclusive province of the trial court, and we decline to disturb the court's findings where, as here, substantial evidence supports them.

The record shows that the trial court reviewed all the exhibits in question, heard the parties' testimony, and expressly found more credible Howard's testimony that she did not write or alter the meeting minutes. The court further found Chastain's testimony that he relied on Howard's

purported misrepresentation hard to believe, given that he had, just months earlier, signed stock certificates which gave *him* a majority of CRG's shares. The court also concluded that Chastain was an "educated and sophisticated individual" and that it was not believable that he would have signed the MSA without understanding its terms. There is ample evidence in the record to support these findings and conclusions. In essence, Chastain asks that we relitigate his fraud claim and the court's factual findings, which we cannot do.

## C. Reference to Spousal Support

Chastain next contends that the trial court's ruling "should be struck and remanded for a new trial" based on its lack of jurisdiction to award spousal support. Chastain is correct that, under Family Code section 4337, any spousal support obligation on his part terminated when Howard remarried. Nonetheless, his argument lacks merit because the court did not make any orders as to spousal support. Chastain relies on the court's comment that "the equalization payment accounted for the community property house and [the] fact that [Howard] *waived spousal support*." (Italics added.) But this reference to Howard's waiver of spousal support is not an order for spousal support.

Trial courts "possess broad discretion to determine the manner in which marital property is divided in order to accomplish an equal division." (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 88.) Here, the judgment of dissolution (which incorporated the MSA) required that Chastain pay Howard $341,154.50, which "represents an equal division of the parties' community property assets." In affirming the enforceability of the MSA and the remaining equalizing payments Chastain owed, the trial court merely recognized that the equalizing payment amount accounted for the fact that

8

Howard gave up her interest in the marital home and waived spousal support. It did not otherwise *order* that Chastain pay any spousal support to Howard.

Chastain also argues that Howard's motion to enforce the MSA is time barred based on the passage of time and her remarriage. This argument lacks merit because it relies on his argument that the trial court did not have jurisdiction to order spousal support, which we have already rejected above. In any event, Chastain cites no legal authority to support this cursory argument. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["An appellant must provide an argument and legal authority to support his [or her] contentions" and this "requires more than a mere assertion that the judgment is wrong"].)

D. <u>Release of the Lien on the Marital Home</u>

Chastain contends that when Howard released her lien on the marital home and received $50,000 from the sale proceeds, this "constituted a full and final release of the entire amount" he still owed in equalizing payments under the MSA. Chastain provides no legal authority to support this argument. And there was more than enough evidence to support the trial court's finding that Howard did not intend to release Chastain of his obligations under the MSA through her acceptance of the $50,000.

The trial court concluded that Howard's release of the lien was not an agreement to modify Chastain's underlying obligation to pay the remaining amount he owed as his equalizing payment. As Howard testified at trial, in releasing the lien on the marital home, Howard was trying to enforce the MSA and collect the money that Chastain owed her: "I – my understanding was that I would have to be notified to release the lien in order for the sale to go through so that I could get a portion or all of the proceeds" "so that I could

9

be paid money towards the equalizing payment." In response, Chastain testified that, based on his calculations, he felt that Howard's release of the lien waived his obligation to make any remaining equalizing payments. Again, the court found Howard's testimony more credible, and we defer to its credibility determinations. Further, Chastain made additional payments in various amounts to Howard *after* the sale of the marital home. This indicates that he believed additional payments were due under the MSA even after Howard released the lien in 2012.

E. <u>Bias Towards Chastain During Trial</u>

Chastain contends that the trial judge displayed "extreme bias" towards him in the form of "eye rolls" and certain statements made at trial and speculates that she had "hidden biases against disabled [male] veterans" who attended Stanford. These claims are unsubstantiated by the record and the statements Chastain references do not support a claim of judicial bias.

A constitutional finding of judicial bias is "appropriate only when 'extreme facts' demonstrate a probability of actual bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 (*Schmidt*).) The "appearance of bias, in the sense of a subjective belief in its existence" is not enough to substantiate a claim of judicial bias. (*Andrews v. Agricultural Labor Relations Board* (1981) 28 Cal.3d 781, 792.) Rather "[a] party must allege concrete facts that demonstrate the challenged judicial officer is contaminated with bias or prejudice." (*Ibid.*)

Here, none of the instances of bias Chastain references are supported by the record. There is no evidence of any "eye rolls" in the record so we cannot consider them. The trial judge also did not display any bias with respect to spousal support because, as discussed above, the judge did not order any. Additionally, the judge's comment that Chastain would not have

signed the MSA without understanding its ramifications due to his education and qualifications does not support any claim of bias. Finally, the judge expressed appreciation to Chastain for his service to the country and acknowledged that he suffered from depression and PTSD.

Chastain further argues that the trial judge was biased because she was "excusing" or " 'not seeing' " the fraud he and his experts identified. The fact that the judge rejected Chastain's fraud claim after hearing all the testimony and reviewing all the evidence does not indicate judicial bias. It merely shows that the judge found the fraud claim unsupported by the evidence. Again, the judge found Howard's testimony more credible, and we cannot and will not disturb these findings on appeal. (*In re Christina T.*, *supra*, 184 Cal.App.3d at p. 639.)

Chastain cites to *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, disapproved on another ground in *People v. Freeman* (2010) 47 Cal.4th 993, to support his claim of gender bias. But the facts in *In re Marriage of Iverson* are distinguishable. There, in his oral statement of decision upholding the validity of a premarital agreement following trial, the judge commented that the wife " '[h]ad nothing going for her except her physical attractiveness' " (*id.* at p. 1498) and mused, " 'why, in heaven's name, do you buy the cow when you get the milk free, as we used to say' " (*id.* at p. 1499). The court of appeal reversed, holding that the statement of decision was "so replete with gender bias that we are forced to conclude [the wife] could not have received a fair trial." (*Id.* at p. 1497.) Here, the trial judge made no comments even suggesting that she harbored any bias against Chastain based on his gender.

F. Lost Trial Exhibits

Lastly, Chastain contends that he is "severely prejudiced" by the trial court's destruction of all of the trial exhibits during the pendency of this

11

appeal. It is unclear what remedy Chastain seeks for this alleged destruction (or more likely loss) of these exhibits. But regardless, the loss of the exhibits did not prejudice Chastain. Even without those exhibits, there is ample evidence to support the trial court's findings and conclusions. Thus, the issues raised on appeal do not turn on the contents of the exhibits themselves. Indeed, it is clear from the record that the court heard testimony regarding the exhibits and reviewed the exhibits before rendering its decision in Howard's favor. It is also clear, based on the trial transcript, that the court did not find Chastain's testimony credible with respect to his claims of fraud and his alleged satisfaction of the MSA. Accordingly, his present inability to refer to the trial exhibits has no bearing on the issues he raises in this appeal.

Chastain further argues that the loss of the trial exhibits constitutes "spoilation of evidence" but provides no authority that a *trial court* can be found to spoliate evidence. Indeed, the only supporting legal authority cited by Chastain, *Velasco v. Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874, involved the negligent destruction of physical evidence by a *party's attorney prior to trial* which, in turn, prejudiced the plaintiffs. Here, by contrast, the exhibits were not destroyed by a party and the trial court had ample opportunity to review and consider them before rendering its decision. We therefore find *Velasco* inapposite.

### III. <u>DISPOSITION</u>

The trial court's July 11, 2023 order is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.
SIMONS, J.

(A168174)